# EXHIBIT A

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE WESTERN DISTRICT OF MISSOURI

 3                     WESTERN DIVISION

 4   TERRI YOLANDA LABLANCE,   )
                               )
 5         Plaintiffs,         )
     vs.                       )
 6                             )
     MISSOURI DEPARTMENT OF    )Case No. 4:19-cv-00693-BP
 7   CORRECTIONS AND CORIZON   )
     HEALTH,                   )
 8                             )
           Defendants.         )
 9

10                   **************

11    VIDEOCONFERENCE DEPOSITION OF STERLING REAM

12            TAKEN ON BEHALF OF THE PLAINTIFF

13                   NOVEMBER 4, 2020

14                   **************

15

16

17

18

19

20

21

22

23

24

25
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 4:19-cv-00693-BP   Document 67-1   Filed 12/03/20   Page 2 of 24

## Page 1

```
 1          IN THE UNITED STATES DISTRICT COURT
 2        FOR THE WESTERN DISTRICT OF MISSOURI
 3                   WESTERN DIVISION
 4   TERRI YOLANDA LABLANCE, )
                             )
 5        Plaintiffs,    )
                         )
     vs.                 )
 6                       )
     MISSOURI DEPARTMENT OF  )Case No. 4:19-cv-00693-BP
 7   CORRECTIONS AND CORIZON )
     HEALTH,              )
 8                       )
          Defendants.    )
 9
10             ***************
11   VIDEOCONFERENCE DEPOSITION OF STERLING REAM
12         TAKEN ON BEHALF OF THE PLAINTIFF
13             NOVEMBER 4, 2020
14             **************
15
16
17
18
19
20
21
22
23
24
25
```

## Page 3

```
 1          A P P E A R A N C E S
 2   For the Plaintiffs:
 3     Mr.  Ivan Nugent
          Krigel & Krigel, P.C.
 4        4520 Main Street, Suite 700
          Kansas City, MO 64111
 5        tel (816)756-5800
 6   For Defendant Corizon:
       Mr.  Michael L. Matula
 7        Ogletree Deakins
          4520 Main Street, Suite 400
 8        Kansas City, Missouri 64111
          tel (816)471-1301
 9
     For Department of Corrections:
10     Ms.  Rachel Jag
          Assistant Attorney General
11        615 E. 13th Street, Suite 401
          Kansas City, Missouri 64106
12        tel (816)889-5000
13
14   Also Present on Zoom:  Jenny Meehan
15
16
17
18
19
20
     Court Reporter:
21   Joann Renee Richardson
     Alaris Litigation Services
22   711 North Eleventh Street
     St. Louis, MO 63101
23   314) 644-2191
     1-800-280-3376
24
25
```

## Page 2

```
 1          THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF MISSOURI
 2                   WESTERN DIVISION
     TERRI YOLANDA LABLANCE,   )
 3                           )
          Plaintiff,    )
 4                       )
     vs.                 )
 5                       ) Case# 4:19-cv-00693-BP
     MISSOURI DEPARTMENT OF    )
 6   CORRECTIONS AND CORIZON   )
     HEALTH,              )
 7                       )
          Defendants.    )
 8
 9        VIDEOCONFERENCE DEPOSITION OF STERLING REAM,
10   produced, sworn and examined on November 4, 2020,
     between the hours of 11:36 a.m. and 1:14 p.m. of that
11   day, via videoconference, before Joann Renee Richardson,
     a Certified Court Reporter within and for the State of
12   Missouri, in a certain cause now pending in the United
     States District Court - Western District, wherein Terri
13   Yolanda LaBlance is the Plaintiff and Missouri
     Department of Corrections and Corizon Health are the
14   Defendants; taken on behalf of the Plaintiff.
15
16
17
18
19
20
21             **********
22
23
24
25
```

## Page 4

```
 1             I N D E X
 2   EXAMINATION BY:              PAGE:
 3   BY MR. NUGENT                  6
 4        *******
 5        E X H I B I T S
 6   EXHIBIT NOS:              PAGE:
 7   12 - Teresa McWhorter email        16
 8   15 - Jerry Lovelace email        25
 9   43 - Auditing Log             18
10   45 - Corrective Action Form Tammie Christopher  39
11   46 - Corrective Action Form Sterling Ream     36
12   47 - Corrective Action Form Tabitha Johnson    41
13   48 - Corrective Action Form Deborah Ritter    43
14   49 - Corrective Action Form Jessica Frizzell   44
15   (Exhibits retained by counsel, not attached.)
16
17
18
19
20
21
22
23
24
25
```

1 (Pages 1 to 4)

ALARIS LITIGATION SERVICES
www.alaris.us    Phone: 1.800.280.3376    Fax: 314.644.1334
Case 4:19-cv-00693-BP   Document 67-1   Filed 12/03/20   Page 3 of 24

## Page 5

1    IT IS HEREBY STIPULATED AND AGREED, by and
2    between counsel for the PLAINTIFF and counsel for the
3    DEFENDANTS that this deposition may be taken in
4    shorthand by Joann Renee Richardson, Certified Court
5    Reporter, and afterwards transcribed into typewriting;
6    and the signature of the witness is expressly reserved.
7         *    *    *    *    *
8         MR. VIDEOGRAPHER:  We are on the record.
9    Today's date is November 4, 2020, and the time is
10   11:36 a.m.  This is the video-recorded deposition of
11   Sterling Ream in the matter of Terri Yolanda LaBlance
12   vs. Missouri Department of Corrections and Corizon
13   Health, Case No. 4:19-cv-00693, in United States
14   District Court, Western District of Missouri, Western
15   Division.  This deposition is being held via WebEx video
16   conference.
17        The reporter's name is Joann Richardson.  My
18   name is Chris Chandler.  I'm the legal videographer.
19   And we are with Alaris Litigation Services.  Today's
20   deposition is being held via videoconference with the
21   court reporter and the witness not appearing in the same
22   room together.
23        Would all the attorneys present please
24   introduce themselves, the parties that they represent,
25   and if they agree to this stipulation of the deposition

## Page 6

1    taking place in this manner.
2         MR. NUGENT:  Good morning.  Ivan Nugent on
3    behalf of the Plaintiff, Terri LaBlance, and we consent
4    to the witness and court reporter being in separate
5    locations.
6         MR. MATULA:  This is Mike Matula on behalf
7    of Corizon Healthcare.  I also agree to the deposition
8    proceeding in this manner.
9         MS. JAG:  This is Rachel Jag for the
10   Department of Corrections and we also stipulate and
11   agree to the deposition being taken in this manner.
12        MR. VIDEOGRAPHER:  Thank you.  Will the
13   court reporter please swear in the witness?  And we may
14   proceed.
15             STERLING REAM,
16   being first duly sworn, produced and examined, testified
17   as follows:
18             EXAMINATION
19   QUESTIONS BY MR. NUGENT:
20        Q.  Good morning, Ms. Ream.  My name is Ivan Nugent
21   and I represent Terri LaBlance.  We are here to take
22   your deposition in that case.  Hopefully this will not
23   last very long.  But, nonetheless, I do have some
24   questions and I'm hoping that you can answer them.  Do
25   you understand that you are here today to give

## Page 7

1    testimony in the case that's been described thus far?
2         A.  Yes.
3         Q.  All right.  Just some housekeeping things.
4    First, the court reporter may have trouble hearing you
5    at times.  So, if you would, just make sure you're
6    close to the computer in front of you so that she can
7    hear you and pick you up clearly.  Secondly, if you
8    need a break, will you let me know so that we can take
9    that break?
10        A.  Sure.
11        Q.  My only ask is that you would answer whatever
12   question is before you prior to us going on that break.
13   Okay?
14        A.  Okay.
15        Q.  If you do not understand any of my questions, can
16   I trust that you will tell me that you don't understand
17   my question?
18        A.  Yes.
19        Q.  And then, lastly, can I assume that you will not
20   rely on any assistance from Ms. Meehan, who is in the
21   room with you?
22        A.  Yes.
23        Q.  Is there anyone else in the room with you right
24   now?
25        A.  No.

## Page 8

1         Q.  All right.  And where are you currently?
2         A.  I am in the green conference room at
3    Chillicothe Correctional Center.
4         Q.  And prior to us starting, you were sworn in by
5    the court reporter to tell the truth.  Do you
6    understand that you are obligated to tell the truth
7    today?
8         A.  Yes.
9         Q.  Great.  Who do you work for?
10        A.  Corizon Health.
11        Q.  And what do you do for Corizon Health?
12        A.  I am the director of nursing.
13        Q.  How long have you been the director of nursing?
14        A.  Almost -- it'll be a year in December.
15        Q.  So you became the director of nursing in December
16   of 2019?
17        A.  Correct.
18        Q.  What was your title prior to becoming the
19   director of nursing?
20        A.  I was the health services administrator.
21        Q.  When did you become the health services
22   administrator?
23        A.  I want to say in May or -- April or May of
24   2018, I think.  Yes.
25        Q.  When did you start working for Corizon?

2 (Pages 5 to 8)

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 4:19-cv-00693-BP    Document 67-1    Filed 12/03/20    Page 4 of 24

## Page 9

1  A. June of 2010.
2  Q. You said June of 20 what?
3  A. 2010.
4  Q. What was your title prior to becoming health
5  services administrator?
6  A. I was an RN staff nurse PRN.
7  Q. And is that what you were hired for in June 2010?
8  A. No. I was an LPN then.
9  Q. Are there any other job titles you've held other
10 than director of nursing, health services
11 administrator, RN, and LPN?
12 A. No.
13 Q. Was the health services administrator position a
14 management position?
15 A. Yes.
16 Q. And is the director of nursing position a manager
17 position?
18 A. Yes.
19 Q. When you became the health services
20 administrator, did you receive a pay raise?
21 A. Yes.
22 Q. Is the acronym HSA health services administrator?
23 A. Yes.
24 Q. Okay. And then can we agree that DON is the
25 acronym for director of nursing?

## Page 10

1  A. Correct.
2  Q. When you became the director of nursing, did that
3  come with a pay increase?
4  A. Yes.
5  Q. How much of an increase between the HSA and the
6  DON position?
7  A. Well, actually, initially I believe it was the
8  same, I think. Yes, around the same. Very close.
9  Q. So did the DON position increase your pay at all?
10 A. No, not initially.
11 Q. Okay. When did --
12 A. If it was, it was very minimal.
13 Q. When did your pay increase?
14 A. I'm sorry. Are you asking when I became DON?
15 Q. Yes.
16 A. Well, I guess I don't understand.
17 Q. Okay. I don't really care how little or how big
18 the increase was. I just want to know if there was an
19 increase.
20 A. There was an increase a few months ago.
21 Q. Okay.
22 A. That was the only -- but I guess what I was
23 trying to say is that the HSA and DON position was,
24 like, just very close to the same rate of pay.
25 Q. Okay. And I don't mean to be technical, but I am

## Page 11

1  going to be. Was the pay different in the DON position
2  from the HSA position?
3  A. Yes. Sorry.
4  Q. That's okay. In your HSA role, from
5  approximately April or May of 2018 until December of
6  2019, were you responsible for supervising any
7  employees?
8  A. Yes.
9  Q. Okay. What job titles did you supervise?
10 A. RNs, LPNs. I mean, I wasn't directly over
11 providers, but I was the supervisor for the site, if
12 that makes sense.
13 Q. It does. Who did you report to when you were the
14 HSA?
15 A. Jenny Meehan.
16 Q. Is it safe to say for non-providers you were
17 the -- you were the person in charge as the HSA?
18 A. Yes.
19 Q. When you became the director of nursing, did you
20 have to apply for that position?
21 A. I'm not sure if I applied, like an actual
22 written application. No, I don't think I did.
23 Q. Okay. Who was the director of nursing prior to
24 you?
25 A. Tammie Christopher.

## Page 12

1  Q. And so after she left, you got the job?
2  A. Well, no.
3  Q. How did you get the job?
4  A. She left, put in her notice to leave. I put
5  in my notice to leave. I ended up staying as the
6  HSA longer. Then I put my notice in to leave. And
7  then I talked to the current HSA now who worked at a
8  different institution. She basically said, If I
9  would come on as the HSA, would you be my DON? And
10 I thought about it and said yes.
11 Q. What's her name?
12 A. Kelley Tipton.
13 Q. It sounded like I heard you say you put in your
14 notice to leave twice. Is that accurate?
15 A. No.
16 Q. Okay.
17 A. Well, maybe it is. I'm not sure. I don't
18 know if I did it twice or just extended my -- I
19 really cannot remember.
20 Q. Why did you put in -- let's just start with the
21 first time you can remember putting in your notice in
22 20 -- this would have been 2019; is that right?
23 A. Right.
24 Q. In 2019, why did you put in your notice the first
25 time?

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334

## Page 13

1    A.  Stress.  It was a lot of stress.  I had little
2    kids at home and it was consuming my life, my job
3    was.
4    Q.  What about the job was stressful?
5    A.  Well, you're a manager of a health services
6    ensuring the population is getting the health
7    services that they need.  And not to mention, you
8    know, you have -- you're over the nurses and
9    staffing.  And it's a lot.
10    Q.  What was your annual salary as the HSA?
11    A.  I believe it was 79, around -- approximately.
12    79 and some change.
13    Q.  You mentioned the patient population.  Correct me
14    if I'm wrong, but Corizon provides healthcare services
15    for inmates in Chillicothe Correctional Center; is that
16    correct?
17    A.  Yes.
18    Q.  And it's a woman's facility; is that right?
19    A.  That's correct.
20    Q.  Do you know the racial demographics of the
21    institution?
22    A.  No, I do not.
23    Q.  Okay.  Would you say that most of the patients
24    seen by Corizon are white patients?
25    A.  I'm sorry, you cut out with that last part.

## Page 14

1    Q.  Sure.  My question is, would you say that the
2    majority of patients seen by Corizon at Chillicothe are
3    Caucasian or white?
4    A.  No, I would not say majority.  I would say
5    it's probably 50 percent, maybe.
6    Q.  50 percent white.
7    A.  Correct.
8    Q.  And what's the other 50 percent?
9    A.  Hispanic, African American.  I mean, I'm not
10    sure the rest, but --
11    Q.  Okay.  What's your highest level of education?
12    A.  Associate's degree.
13    Q.  Are you married?
14    A.  Yes.
15    Q.  Does your spouse work for the Department of
16    Corrections?
17    A.  No.
18    Q.  Do you have any relatives that work for the
19    Department of Corrections?
20    A.  I do.
21    Q.  Can you tell me their names?
22    A.  Sherry Walsh.
23    Q.  And what does she do?
24    A.  She is a cook, I believe.
25    Q.  Anyone else?

## Page 15

1    A.  No.
2    Q.  When did you first meet Terri LaBlance?
3    A.  It was in 2017, probably shortly after she
4    started.
5    Q.  Okay.  And do you recall what Ms. LaBlance --
6    what her title was when she was hired?
7    A.  Nurse practitioner.
8    Q.  Would she be considered a provider?
9    A.  Yes.
10    Q.  So she didn't report to you, did she?
11    A.  No.
12    Q.  Ms. Ream, have you had your deposition taken
13    before?
14    A.  No.
15    Q.  Outside of Ms. LaBlance, have you had any other
16    African American colleagues?
17    A.  Yes.
18    Q.  Do you know how many?
19    A.  Just for Corizon or for DOC, all -- I mean --
20    Q.  For Corizon.
21    A.  Okay.  That I can recall right now, I think
22    two other.
23    Q.  So including Ms. LaBlance, does that make three?
24    A.  Yes.
25    Q.  Were those other two employed with Corizon prior

## Page 16

1    to Ms. LaBlance.
2    A.  I'm sorry, prior to what?
3    Q.  Prior to Ms. LaBlance.
4    A.  Yes.
5    Q.  Since Ms. LaBlance is no longer employed with
6    Corizon, have there been any other African Americans
7    that have worked for Corizon at Chillicothe?
8    A.  I mean, we have a provider that comes to
9    another institution that would come and help us.  So
10    I don't know if he was coming after she left.  I
11    can't remember.
12    Q.  What's his name?
13    A.  Dr. Eucadway.  (Phonetic on name.)
14    Q.  I'm going to show you some documents.  Ms. Ream,
15    do you see a document in front of you with a
16    handwritten 12 in the bottom right-hand corner of it?
17    A.  Yes.
18    Q.  What I've put in front of you for record purposes
19    is a document that's been previously used in
20    depositions related to this case and it is identified
21    as Deposition Exhibit 12.  I am going to start on a
22    page that's been Bates-labeled as Corizon 9.  Do you
23    see that in front of you right now?
24    A.  Yes.
25    Q.  All right.  Prior to today have you reviewed any

4 (Pages 13 to 16)

ALARIS LITIGATION SERVICES
www.alaris.us                    Phone: 1.800.280.3376                    Fax: 314.644.1334
Case 4:19-cv-00693-BP    Document 67-1    Filed 12/03/20    Page 6 of 24

Page 17

1    documents in preparation for your deposition?
2    A. Yes.
3        Q. What documents did you look at?
4    A. This one.
5        Q. Any other documents?
6    A. Yes.
7        Q. What other documents?
8    A. My corrective action. There were six total.
9    Let's see. This one, my corrective action, an
10   email. I think two emails. I think it was an email
11   or -- the email from Terri about Judy.
12       Q. Email from Terri about duty?
13   A. Judy Harkins.
14       Q. Got it. Is that the universe of documents that
15   you looked at prior to today?
16   A. Correct.
17       Q. All right. I want to -- I want you to read your
18   statement here and let me know when you're finished.
19   You can just read it to yourself.
20   A. Yes. I'm done.
21       Q. Okay. Great. Do you remember this incident
22   involving Ms. Barker and Ms. LaBlance?
23   A. Yes, I do.
24       Q. Were you present for the conversation?
25   A. No, I was not.

Page 18

1        Q. You said, "After Jenni." What's Jenni's last
2    name?
3    A. Jenni Preston.
4        Q. Does Jenni Preston still work for Corizon?
5    A. No.
6        Q. Do you remember when she left?
7    A. I have no clue.
8        Q. All right. Do you recall who asked you to
9    prepare this statement?
10   A. Yes. Teresa McWhorter.
11       Q. Does the statement -- as you've read it today, is
12   it the same as it was when you wrote it in 2017?
13   A. Yes.
14       Q. Thank you. I want to bring up another document.
15   Do you see a document in front of you that has the
16   heading "Auditing Log Search Results"?
17   A. Yes.
18       Q. I'll represent to you that this is a list of
19   individuals who accessed Ms. LaBlance's medical records
20   from the Department of Corrections from January 1 of
21   2017 to March 8th of 2019. This has also been
22   previously used in depositions and is Deposition
23   Exhibit 43. I'm on Page 3 of 4 that is Bates-labeled
24   MDOC1942. Do you see your name there at the top?
25   A. Uh-huh. Yes.

Page 19

1        Q. Okay. On December 9, 2017, you accessed
2    Ms. LaBlance's charting guide list page, right?
3    A. Yes.
4        Q. In the previous exhibit we were just looking at,
5    which was the -- your statement in response to an
6    incident between Ms. Barker and Ms. LaBlance, that was
7    in August of 2017. Would you agree?
8    A. Yes, I believe so.
9        Q. Okay. And then approximately four months later,
10   you're looking at the charting guide list page for
11   Ms. LaBlance. Can you tell me why?
12   A. The current HSA at the time -- I was working
13   in the ER. I don't know if it was that same day.
14   I'm not sure. But there was some -- she was walking
15   into the ER and had said something about Terri's
16   criminal record. And, of course, I was surprised.
17   And so curiosity like I really couldn't believe
18   it.
19       Q. What were you curious about?
20   A. If it was true.
21       Q. Prior to December 9th, did you know whether or
22   not Ms. LaBlance had a criminal record?
23   A. I don't believe so.
24       Q. Do you know?
25   A. I'm sorry. What? Do I know what?

Page 20

1        Q. Do you know whether or not she did?
2    A. I do, but don't know the fullest extent or
3    anything. I mean, I don't know -- I know that she
4    has a DOC number.
5        Q. Let me clear up my question just a little bit.
6    The question is, prior to December 9th of 2017, did you
7    know that Ms. LaBlance had a criminal record? And I
8    believe your answer was that you did not know; is that
9    right?
10   A. Yes. Correct. I believe so, yes.
11       Q. Okay. And so when was the first time that you
12   learned that Ms. LaBlance had a criminal record?
13   A. It had to be around that time that I looked at
14   the face page.
15       Q. Is the face page what you see if you're on the
16   charting guide list page?
17   A. I'm guessing that's what they're calling it,
18   yes.
19       Q. When you say you're guessing that's what they're
20   calling it, who is they?
21   A. I mean, it doesn't have a name. It's just
22   when you type in the number and the picture and the
23   DOC number is there.
24       Q. Okay. Who was the person that came into the ER
25   and mentioned it that you were referring to a moment

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 4:19-cv-00693-BP   Document 67-1   Filed 12/03/20   Page 7 of 24

## Page 21

1  ago?
2  A. Teresa McWhorter.
3  Q. What was your impression of Ms. McWhorter's
4  comments about Ms. LaBlance's records?
5  A. What was my impression?
6  Q. Yes.
7  A. My impression was disbelief.
8  Q. Okay. Did Ms. McWhorter appear to you to be
9  surprised as well?
10  A. Yes.
11  Q. Did Ms. McWhorter tell you how she learned of
12  Ms. LaBlance's DOC records?
13  A. No.
14  Q. Was there anyone else present with you when
15  Ms. McWhorter told you about Ms. LaBlance's records?
16  A. No.
17  Q. So it was just you in the room?
18  A. Right.
19  Q. What did you do after Ms. McWhorter told you?
20  A. Well, I was working in the ER, so I continued
21  to work, I believe.
22  Q. Okay. Did you tell anyone else what
23  Ms. McWhorter had told you?
24  A. No, I did not discuss it.
25  Q. After she told you, you just looked up

## Page 22

1  Ms. LaBlance in the MOCIS software; is that right?
2  A. Right.
3  Q. Did you search by name or by number?
4  A. I believe name. I wouldn't have had a number.
5  Q. What were your hours in December of 2017?
6  A. I was PRN.
7  Q. Okay. So you worked as needed?
8  A. Yes.
9  Q. When you worked as needed were you called in to
10  shifts, or were you called in for a specific amount of
11  time?
12  A. It would vary. I would be called in last
13  minute or it could have been a scheduled shift. I'm
14  not sure.
15  Q. So at 4:46 p.m., is that in the middle of a
16  shift?
17  A. No.
18  Q. Is it at the end of the shift?
19  A. No. It would be -- I'm assuming that maybe I
20  was working 3 to 11, maybe. I'm not sure.
21  Q. So what's the shift that's before the 3-to-11
22  shift?
23  A. Well, it used to be 6:45 to 3 or 7 to 3.
24  Q. So you were written up for accessing
25  Ms. LaBlance's records, right?

## Page 23

1  A. Yes.
2  Q. And you were written up in March of 2019, right?
3  A. Yes.
4  Q. So that was about a year and a half after you did
5  it; is that right?
6  A. Yes.
7  Q. Okay. How did you feel about being written up
8  about something that happened a year and a half ago?
9  A. I feel like -- I mean, I felt bad. I've never
10  been written up before in my career. You know,
11  after -- I mean, I feel like I probably deserved it.
12  Q. Do you know how Corizon found out that you
13  accessed the record?
14  A. No.
15  Q. Was it surprising to you that they found out that
16  you accessed it?
17  A. Surprising? Maybe since it had been so long,
18  yes.
19  Q. Do you know whether or not any other individuals
20  were written up?
21  A. Yes.
22  Q. Who do you know that was written up?
23  A. Well, probably everybody that was on the page
24  that accessed it. There were several. I don't
25  remember everyone.

## Page 24

1  Q. Okay. Do you know Judy Harkins?
2  A. Yes.
3  Q. Does she still work for Corizon?
4  A. Yes.
5  Q. Do you know whether or not Ms. Harkins was
6  written up?
7  A. I couldn't tell you for sure, but I think
8  anybody who did received corrective action.
9  Q. Okay. Is it safe to say that your opinion is
10  anybody who did should have been written up?
11  A. Yes.
12  Q. All right. And tell me what your understanding
13  is of why you were written up.
14  A. Because I accessed her face page.
15  Q. Do you believe that you were written up for
16  accessing HIPAA-protected information?
17  A. Well, now -- I mean, I didn't think of the
18  face page as being a HIPAA violation. But now I
19  feel like I -- you know, obviously it was not the
20  right thing to do.
21  Q. Well, why wasn't it the right thing to do, in
22  your opinion?
23  A. Because I worked with her and she wasn't a
24  patient of mine.
25  Q. Okay. So if I'm understanding your testimony

6 (Pages 21 to 24)

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 4:19-cv-00693-BP   Document 67-1   Filed 12/03/20   Page 8 of 24

## Page 25

1  correctly, are you saying because you accessed
2  information that you should not have accessed?
3      A. Right, her face page.  Right.
4      Q. Would you refer to her face page as
5  HIPAA-protected information?
6      A. Well, her date of birth is on there.  So yes.
7      Q. Ms. Ream, I have tried to put the next document
8  in front of you.  It's been used in prior depositions
9  and it is labeled Deposition Exhibit 15.  Do you see a
10  15 in front of you?
11     A. Yes.
12     Q. All right.  I have scrolled to the bottom of
13  Exhibit 15.  It is Corizon 23 and Corizon 24.  Is this
14  one that you reviewed prior to your deposition today?
15     A. I believe so, yes.
16     Q. This is an email from Terri LaBlance to you and
17  Dr. Epperson and she copies Jerry Lovelace, Jenny
18  Meehan and Valicia Kirby.  Do you see where I am?
19     A. It's really small, but yes.
20     Q. One second.  Is that better?
21     A. Yes.
22     Q. Do you remember receiving this email from
23  Ms. LaBlance?
24     A. Yes.
25     Q. Do you see where it says, "The lab tech refused

## Page 26

1  to complete the requisition and took the specimen to my
2  office and sat it on my desk while stating, 'I told you
3  not to sit that on my desk!'"?
4      A. Yes, I see that.
5      Q. All right.  Do you recall what the specimen was?
6      A. It was urine.
7      Q. In a small cup?
8      A. Yes.
9      Q. And is that cup see-through?
10     A. Yes.
11     Q. Did that cup have a lid on it; do you know?
12     A. I do not know that.  I'm assuming it did.
13     Q. Okay.  Ms. Ream, I just scrolled through all of
14  the emails that are present here and I did not see that
15  you emailed anything related to this incident.
16     A. No.
17     Q. Do you recall whether you did write an email
18  related to this incident?
19     A. No, I don't believe so.  I forwarded the
20  emails to my supervisor.
21     Q. You forwarded --
22     A. I believe that -- I'm sorry.  Can you scroll
23  back up?  I think it was to me, wasn't it, initially
24  from Terri?
25     Q. So this is the first email on Corizon 23 and 24.

## Page 27

1      A. Right.  Yeah.  So it was to me and then
2  Jerry -- Dr. Lovelace and Jenny were cc'd on it.  I
3  believe I forwarded it, but maybe I didn't since
4  they were already on it.  I'm not sure.
5      Q. So is it safe to say you don't know whether you
6  forwarded it or not?
7      A. No.
8      Q. Okay.  The date that Terri sent this is June 6th
9  of 2018.  And we were just looking at Exhibit 43 that
10  showed you accessing Ms. LaBlance's face sheet about
11  seven months before.
12     A. Uh-huh.
13     Q. Is that accurate?
14     A. I think so, yes.
15     Q. In between December of '17 and June 6, 2018, do
16  you recall whether you told anyone about Ms. LaBlance's
17  Department of Corrections records?
18     A. No.
19     Q. Did you tell anyone about her records?
20     A. I don't believe so.
21     Q. When you say you don't believe so, are you sure?
22     A. I don't think I would have discussed it with
23  anybody.  The rumor was flying around with the
24  nurses.  I'd heard people mention it and talk about
25  it.  But, no, I do not believe that I discussed it

## Page 28

1  with anybody, that I can remember.
2      Q. With regards to those rumors, when did you start
3  hearing those rumors?
4      A. Well, about the time that I heard them.
5      Q. So around December of 2017?
6      A. Correct.
7      Q. And did you hear those rumors throughout 2018?
8      A. No, I don't believe so.
9      Q. Okay.  Did you hear those rumors prior to
10  Ms. LaBlance leaving Corizon?
11     A. Yes.
12     Q. Ms. LaBlance left in February of 2019.  Did you
13  hear those rumors in January or February of 2019 or
14  prior to?
15     A. Probably around January or February -- well,
16  I'm assuming -- no, I think it was more like
17  February.
18     Q. Okay.  When you say it was rumors discussed or,
19  you know -- the nurses were a part of this or whatnot,
20  which nurses?
21     A. In 20 --
22     Q. Whenever you heard these rumors?
23     A. Initially in December?
24     Q. Yeah.
25     A. Everyone at the time.  I mean, I don't want to

7 (Pages 25 to 28)

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 4:19-cv-00693-BP    Document 67-1    Filed 12/03/20    Page 9 of 24

## Page 29

1    say everyone, but I can't remember specifically who.
2        Q.  Okay.  How many Corizon employees were there at
3    Chillicothe in December of '17?
4        A.  That I do not know.
5        Q.  Did it feel like everyone was talking about in
6    December of 2017?
7        A.  Well, maybe not everybody.  It didn't last
8    long.
9        Q.  How long did it last?
10        A.  I don't know.  I can't remember.  I had
11    forgotten about it from then until February of 2019,
12    probably.
13        Q.  Did it concern you at the time that employees
14    were talking about a rumor like that?
15        A.  Yes.
16        Q.  Did you do anything about it?
17        A.  Maybe I misunderstood the question.  I was
18    only a staff nurse at that time.
19        Q.  So the fact that you were only a staff nurse at
20    that time, what does that mean with regards to whether
21    you could have done anything about it or not?
22        A.  Done anything about people talking about it?
23        Q.  Yes.
24        A.  Well, my boss at the time was talking about
25    it.  So she knew.  And I assumed if she told a staff

## Page 30

1    nurse, she probably told more than just me.  I mean,
2    she's my supervisor.  She was my supervisor.  So,
3    you know, she'd already knew about it.  I don't know
4    who I would report it to.
5        Q.  And your boss was Teresa McWhorter, right?
6        A.  Correct.
7        Q.  Who was Teresa McWhorter's supervisor?
8        A.  I believe Jenny -- I'm not sure at that time
9    if it was Jenny or Pat.
10        Q.  Okay.  Could you have told Jenny or Pat about the
11    rumors that you were hearing?
12        A.  Well, at the time probably I didn't think to
13    do that.  I didn't know them.  They weren't my
14    supervisors.  And at that time, I -- no.
15        Q.  In June of 2018, when Terri LaBlance sends you
16    this email that you did not forward, did you tell
17    anyone then about the rumors that you had heard and --
18        A.  No.
19        Q.  -- the fact that it might be relevant to this
20    email?
21        A.  No.
22        Q.  Okay.  Do you see this email here that you're
23    copied on from Jenny Meehan?  It says, "I have
24    discussed this with Ms. LaBlance and Judy Harkins."
25        Judy Harkins is the lab tech that Ms. LaBlance is

## Page 31

1    complaining about; is that right?
2        A.  Yes.
3        Q.  Do you know whether Ms. Harkins was a part of the
4    group that you were discussing with regards to the
5    rumors being spread around about Ms. LaBlance and her
6    Department of Corrections record?
7        A.  No.
8        Q.  Do you know any of the names that were discussing
9    Ms. LaBlance's criminal records around December of
10    2017, other than Ms. McWhorter?
11        A.  No.
12        Q.  Okay.  With regards to the nurses in 2017 -- in
13    December of 2017, were there more than ten nurses?
14        A.  I would think so, yes.
15        Q.  Were there more than 20 nurses?
16        A.  I am not sure.  I don't know.
17        Q.  Okay.  Were there more than 30 nurses?
18        A.  I do not know.
19        Q.  Okay.  Do you know whether there were more than
20    40?
21        A.  No, I do not know.
22        Q.  Do you know if there were more than 50 nurses?
23        A.  No, I do not know.
24        Q.  Okay.  Do you know if there were more than 100
25    nurses?

## Page 32

1        A.  No.  There was not more than 100, no.
2        Q.  So there weren't more than 100 nurses?
3        A.  No.  I don't know the number of staff that
4    they had at that time.
5        Q.  I understand you don't know the exact number.
6    I'm asking if you know whether there were more than
7    ten.
8        A.  Probably.
9        Q.  Were there more than 20?
10            MR. MATULA:  Object to form.  You just asked
11    these exact same questions.  Go ahead.
12        Q.  (By Mr. Nugent)  You can answer.
13        A.  I'm sorry?  Somebody was talking.  I didn't
14    hear.
15        Q.  So your attorney just made an objection for the
16    record, but you can answer the question.  So were there
17    more than 20 nurses?
18        A.  I do not know.  I don't have an exact count,
19    so therefore I can't confirm how many nurses there
20    were.  If there was more than ten, I do believe
21    there was.  If there was more than 20, I'm not sure.
22        Q.  That's helpful.  Thank you.
23        A.  Okay.
24        Q.  As a nurse for Corizon at the Chillicothe
25    facility, do you utilize the MOCIS software daily?

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 4:19-cv-00693-BP   Document 67-1   Filed 12/03/20   Page 10 of 24

## Page 33

1  A. Yes.
2  Q. All right.  Ms. Ream, I'm going to ask you if you
3  know a number of names.  And then if you do, I'll have
4  a couple of follow-ups.  Do you know Deborah Ritter?
5  A. Yes.
6  Q. Is she still employed with Corizon?
7  A. No.
8  Q. Do you know Megan Rex?
9  A. Yes.
10  Q. Do you know Jessica Frizzell?
11  A. Yes.
12  Q. Is she still employed?
13  A. Yes.
14  Q. Do you know Brandon Doss?
15  A. No, I do not.
16  Q. Okay.  Do you know Lori Switzer?
17  A. Yes.
18  Q. Do you know Brandy Baker?
19  A. Yes.
20  Q. Do you know whether Brandy is still employed with
21  Corizon?
22  A. No, she is not.
23  Q. Do you know Shannon Burris?
24  A. Yes.
25  Q. Do you know Teresa Hamilton?

## Page 34

1  A. Yes.
2  Q. Do you know whether Teresa Hamilton was one of
3  the nurses talking about Ms. LaBlance's Department of
4  Corrections records?
5  A. I'm not -- could possibly, yes.  I'm not sure
6  if it was her or not.
7  Q. Okay.  Do you know Tabitha Johnson?
8  A. Yes.
9  Q. Do you know whether she was one of the nurses
10  talking about Ms. LaBlance's Department of Corrections
11  records?
12  A. I don't know.
13  Q. Do you know Rachel Rempel?
14  A. Yes.
15  Q. Okay.  Is she still employed?
16  A. Yes.
17  Q. I've got a different list of names here I want to
18  ask you about.  Do you know Nicholas Koenig?
19  A. I believe so.
20  Q. Last name is spelled K-O-E-N-I-G.
21  A. I think, yes.
22  Q. How do you know Nicholas?
23  A. If it's the same -- I think that's a husband
24  to an employee.
25  Q. Which employee?

## Page 35

1  A. Amanda.
2  Q. What's Amanda's last name?
3  A. Koenig.
4  Q. Is she still employed by Corizon?
5  A. Yes.
6  Q. What's her title?
7  A. She's a dental assistant.
8  Q. Do you know when Ms. Koenig started with Corizon?
9  A. I do not.
10  Q. Okay.  Do you know April Wolf?
11  A. Yes.
12  Q. Does April work for the Department of
13  Corrections?
14  A. Yes.
15  Q. Do you know Dustin Lybarger?
16  A. Yes, I believe so.  I don't -- I know last
17  names more than I know first names.  So I'm not
18  positive that that's the same person, but I think it
19  is.
20  Q. What about Bradley Richards?
21  A. I don't know who that is.
22  Q. Okay.  If I told you that Dustin Lybarger was a
23  Department of Corrections employee, would that be the
24  person that you believe you know?
25  A. I think so, yes.

## Page 36

1  Q. Do you know a Jeff Parque?  (Phonetic on name.)
2  A. Yes.
3  Q. Department of Corrections employee?
4  A. Yes.
5  Q. Mindy Rhodes?
6  A. No, I don't know that person.
7  Q. What about Ashton Christopher?
8  A. Yes.
9  Q. A DOC employee?
10  A. Yes.
11  Q. And Philip Bower?
12  A. I do not know who that is.
13  Q. Any of the DOC names that I just read off, do you
14  socialize outside of the workplace with any of them?
15  A. No.
16  Q. Ms. Ream, have you looked at any other DOC
17  records out of curiosity in the same way in which you
18  looked at Ms. LaBlance's records?
19  A. No.
20  Q. You should have a document on your screen.  It's
21  been marked as Deposition Exhibit 46.  Do you see that?
22  A. Yes.
23  Q. All right.  It is Bates-labeled Corizon 1006.
24  Can you identify what Exhibit 46 is, please?
25  A. It's my corrective action.

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334

## Page 37

1    Q. Is this one of the documents that you reviewed
2  prior to today?
3    A. Yes.
4    Q. All right.  I asked you a couple of questions
5  about it already, but you received this on March 25,
6  2019; is that right?
7    A. Yes.
8    Q. And is that your signature there?
9    A. Yes.
10   Q. Okay.  To make sure that I have my timeline
11  right, in December of 2017 when you accessed
12  Ms. LaBlance's record, you were a staff nurse at that
13  point; is that right?
14   A. Correct.
15   Q. And then in April you had -- April of 2018 you
16  became the HSA, right?
17   A. Around that time, yes.
18   Q. Did you apply for the position -- for the HSA
19  position?
20   A. Yes.
21   Q. Okay.  Filled out an application and everything?
22   A. Yes.
23   Q. Did you have to interview for that position?
24   A. Yes, I did.
25   Q. Do you remember who you interviewed with?

## Page 38

1    A. I interviewed with Jenny and Cindy Schupp.
2  Jenny Meehan and Cindy Schupp.
3    Q. Thank you.  Who issued this reprimand to you?
4    A. Jenny Meehan.
5    Q. Okay.  I'm looking at the Details of Current
6  Incident section here.  Did she tell you how she was
7  notified about your accessing the face sheet?
8    A. No.
9    Q. And I assume that Ms. Meehan met with you
10  face-to-face about this; is that right?
11   A. Yes.
12   Q. Was there anyone else present in that meeting?
13   A. Well, Tammie and I shared an office at that
14  time.  I think Tammie was in there, maybe.  I think
15  so.
16   Q. So you, Tammie Christopher and Jenny Meehan?
17   A. Yes.
18   Q. Okay.  What did Ms. Meehan tell you in this
19  meeting on March 25th?
20   A. Well, the Details of Current Incident was
21  read.
22   Q. So this paragraph was read to you here, the
23  Details of Current Incident?
24   A. Right.  And the expectations to complete the
25  HIPAA training.

## Page 39

1    Q. Did you complete the HIPAA training?
2    A. I did.
3    Q. Outside of reviewing the Details of Current
4  Incident and the expectations discussed, was there any
5  other conversation with you and Ms. Meehan about this
6  write-up?
7    A. Not that I can recall.
8    Q. Did you offer a rebuttal to Ms. Meehan about the
9  write-up?
10   A. No.
11   Q. Did you agree with the write-up?
12   A. Yes.
13   Q. Did you sit in on anyone else's reprimand as a
14  result of the individuals accessing Ms. LaBlance's
15  records?
16   A. Yes.  I had to give the employees there were
17  underneath me, I had to give them their write-ups.
18   Q. Do you recall who that was?
19   A. I don't.  There was several.
20   Q. Do you see Exhibit 45 in front of you?
21   A. Yes.
22   Q. And this is Corizon 1005.  Do you see where it
23  says "witness signature"?
24   A. Yes.
25   Q. Is that your signature?

## Page 40

1    A. Yes.
2    Q. Okay.  And this is Tammie Christopher's
3  Corrective Action Form.  Is she someone that you had to
4  sit in on with regards to giving discipline?
5    A. Yes.
6    Q. And why was Ms. Christopher disciplined?
7    A. Because of the same thing.
8    Q. That you were disciplined for?
9    A. Correct.
10   Q. Did anyone tell you why you had to sit in on
11  Ms. Christopher's reprimand?
12   A. Well, I was her direct supervisor at the time.
13   Q. So on the same date that you were reprimanded,
14  you sat in on these other reprimands; is that accurate?
15   A. Yes.
16   Q. Okay.  In discussing why Ms. Christopher was
17  reprimanded, did you have knowledge of when
18  Ms. Christopher accessed Ms. LaBlance's records?
19   A. No.
20   Q. Were you a part of recommending the level of
21  discipline that Ms. Christopher received?
22   A. No.
23   Q. Who made that decision?
24   A. I believe -- I'm not sure.  Maybe Jenny.  I
25  don't know.

10 (Pages 37 to 40)

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 4:19-cv-00693-BP   Document 67-1   Filed 12/03/20   Page 12 of 24

## Page 41

1  Q. Did you feel like the first written counseling
2  was the appropriate level of discipline?
3  A. Yes.
4  Q. I'm going to clarify. Do you feel that that was
5  the appropriate level of discipline for
6  Ms. Christopher?
7  A. Yes.
8  Q. Okay. That's also the same level of discipline
9  that you received. Do you feel that it was the
10  appropriate level for you?
11  A. Yes.
12  Q. Why do you believe that it was the appropriate
13  level for you?
14  A. Why do I believe it was the appropriate level
15  for me? Because I did not access a medical record.
16  It was a face sheet.
17  Q. Okay. Do you see Exhibit 46 in front of you?
18  A. Yes.
19  Q. That was yours. Apologies. Do you see Exhibit
20  47?
21  A. Yes.
22  Q. Exhibit 47 is Corizon 1003. Is that your
23  signature there on the manager's line?
24  A. Yes.
25  Q. Okay. On Tammie Christopher's, your signature

## Page 42

1  was on the witness signature line. Do you know why --
2  do you know why there's a difference?
3  A. Well, because Tammie is not my supervisor, or
4  was not.
5  Q. Was Tabitha someone that you sat in on the first
6  written counseling discipline session?
7  A. Yes. Tammie and I gave the corrective actions
8  to the employees.
9  Q. Okay. So you and Tammie Christopher gave Tabitha
10  Johnson this corrective action form?
11  A. Yes. We both signed it.
12  Q. Is that Tammie Christopher's signature on the
13  bottom there?
14  A. Yes.
15  Q. And I think we said that's yours in the middle;
16  is that right?
17  A. Yes.
18  Q. Did you believe that the first written counseling
19  was the appropriate level of discipline for Tabitha
20  Johnson?
21  A. Yes.
22  Q. Why is that?
23  A. Because it says that she accessed the face
24  sheet.
25  Q. When you met with Tabitha Johnson, was there

## Page 43

1  anyone else in the room other than you, Tabitha, and
2  Tammie Christopher?
3  A. No.
4  Q. Do you recall what you said to Ms. Johnson about
5  why she was being written up?
6  A. I read the Details of Current Incident and the
7  expectations discussed.
8  Q. Did she ask you any questions?
9  A. No, I don't believe so. I don't believe
10  anybody did.
11  Q. Was there anybody that disagreed with being
12  written up for accessing Ms. LaBlance's records?
13  A. No, I don't believe so. Not that I can
14  recall.
15  Q. Do you see Exhibit 48 in front of you?
16  A. Yes.
17  Q. Do you have an Exhibit 48 in front of you?
18  A. Yes.
19  Q. All right. This is the Corrective Action Form
20  for Deborah Ritter. Is that your signature there on
21  the manager's signature line?
22  A. Yes.
23  Q. And is that Tammie Christopher below you?
24  A. Yes.
25  Q. Was Ms. Ritter also being written up for

## Page 44

1  accessing Ms. LaBlance's Department of Corrections
2  records?
3  A. Her face sheet, yes.
4  Q. Okay. Did you agree with this level of
5  discipline for Ms. Ritter?
6  A. Yes.
7  Q. Do you know who from Corizon looked into the
8  employees that accessed Ms. LaBlance's records?
9  A. I do not.
10  Q. Were you presented with these corrective action
11  forms and told to present them to the employees?
12  A. Yes.
13  Q. And that was done by Jenny Meehan; is that right?
14  A. Right.
15  Q. Was there anyone else present when Jenny Meehan
16  told you to give these corrective action forms?
17  A. I believe Tammie was.
18  Q. Do you have an Exhibit 49 in front of you?
19  A. Yes.
20  Q. This is Corizon 1004. Is that your signature
21  under the manager's signature line?
22  A. Yes.
23  Q. And is that Tammie Christopher below you?
24  A. Yes.
25  Q. And this is the corrective action form for

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334

Case 4:19-cv-00693-BP   Document 67-1   Filed 12/03/20   Page 13 of 24

## Page 45

1  Jessica Frizzell; is that right?
2    A. Yes.
3    Q. I assume you agreed with the level of discipline
4  given to Ms. Frizzell.
5    A. Yes.
6    Q. I believe that that's all of the discipline forms
7  that I was given.  Do you recall whether there was
8  anyone else that was disciplined for accessing
9  Ms. LaBlance's records?
10    A. It seems that there was more than that.
11    Q. Okay.  When you say it seems like there was more
12  than that, can you tell me why you think that?
13    A. Because I'm pretty sure there was several.
14    Q. Who else?
15    A. I don't know, but it seems like there was
16  more. I could be wrong, but it seemed like there
17  was more.
18    Q. When you say it seems like there was more, more
19  people that report to you?
20    A. Right.
21    Q. Okay.  Are you aware of any other Corizon
22  employees having been written up for accessing records
23  of non-patients?
24    A. Not that I know of.
25    Q. In talking to Ms. Christopher this morning, she

## Page 46

1  mentioned that Val Kirby and/or Dr. Epperson may have
2  come into the office that you and Ms. Christopher
3  shared and talked about Ms. LaBlance's records in the
4  MOCIS system.  Do you recall something like that
5  happening?
6    A. Well, I don't know that it was in the MOCIS
7  system.  It was more of -- it was discovered by them
8  that she had a record and asked me if I knew about
9  that.
10    Q. Who asked you if you knew about that?
11    A. Dr. Epperson.
12    Q. When did Dr. Epperson ask you?
13    A. It must have been in mid February, probably.
14  Somewhere in there.
15    Q. Why does that stick out to you, mid February?
16    A. Because that's when -- it was around the
17  time -- well, Terri's last day, around that time.
18    Q. Okay.  Prior to mid February, did you have
19  any other conversations with Ms. Kirby or Dr. Epperson
20  about Ms. LaBlance's records?
21    A. No.
22    Q. Who was present when Dr. Epperson was talking to
23  you about Ms. LaBlance's records?
24    A. Maybe Tammie.  We share an office, so chances
25  were good she was in there, but I'm not sure she

## Page 47

1  was.  I'm not positive.
2    Q. Okay.  What did Ms. Epperson tell you about those
3  records?
4    A. She just said, "She has a criminal background
5  and I'm her collaborating physician."  She was more
6  expressing that she was hurt that she wasn't told,
7  because her and Terri were very good friends.  And
8  basically that, you know, if she was the
9  collaborating physician, she should have been aware
10  of that.  And I directed her to the regional office
11  because I was not -- I wasn't going to discuss it.
12    Q. In mid February when Dr. Epperson had this
13  conversation with you, you knew that Ms. LaBlance had a
14  criminal record, right?
15    A. I had known, yes.
16    Q. Why didn't you want to discuss it with
17  Dr. Epperson?
18    A. I didn't think it was my place.
19    Q. Prior to this mid February conversation with
20  Dr. Epperson, did you have any conversations with
21  Dr. Epperson about Ms. LaBlance and whether or not
22  those two got along?
23    A. Whether they got along or not?  Val,
24  Dr. Epperson and Terri were all very close.  Good
25  friends.

## Page 48

1    Q. Okay.  Was Dr. Epperson also good friends with
2  Tammie Christopher?
3    A. I wouldn't say good friends, no.  We didn't --
4  I don't think Tammie -- no.
5    Q. So earlier we looked at the corrective action
6  form for Jessica Frizzell and we saw your signature on
7  the manager's signature line.  Ms. Frizzell was a
8  dental assistant; is that right?
9    A. Right.
10    Q. So did the dental non-providers report to you?
11    A. Yes.
12    Q. And the rumors that you referenced earlier, were
13  those rumors also extending to the dental staff?
14    A. I don't know for sure.  Probably.  I would
15  assume.
16      MR. MATULA:  Ivan, we've been going for
17  about an hour or so.  Is this now a decent time for a
18  little break?  How much more time do you think?
19      MR. NUGENT:  We can take a break.  That's
20  fine.  Let's just go off the record.
21      MR. VIDEOGRAPHER:  We're going off the
22  record.  The time is 1:02 p.m.
23      (Off the record.)
24      _____
25      (Back on the record.)

12 (Pages 45 to 48)

ALARIS LITIGATION SERVICES
www.alaris.us    Phone: 1.800.280.3376    Fax: 314.644.1334
Case 4:19-cv-00693-BP   Document 67-1   Filed 12/03/20   Page 14 of 24

## Page 49

1          MR. VIDEOGRAPHER:  We are back on the
2     record.  The time is 1:10 p.m.
3          Q.  (By Mr. Nugent) Ms. Ream, can you hear me?
4          A.  Yes.
5          Q.  Okay.  We just took a short break.  We're back.
6     Do you understand that you are still under oath?
7          A.  Yes.
8          Q.  I've got just a few more questions and I will be
9     done.  Let me share a document with you.  You should
10    have in front of you Exhibit 43.  We've looked at it
11    before.  Do you have that?
12         A.  Yes.
13         Q.  Okay.  And, again, this is the audit log of
14    individuals who accessed Ms. LaBlance's records.  And I
15    want to go to yours really quick.  If you remember,
16    your entry on December 9th shows that you accessed the
17    charting guide list page.  Would you agree with me that
18    that's the face sheet?
19         A.  Yes.
20         Q.  And I believe your testimony is that that is
21    not -- it doesn't contain HIPAA information.  That's
22    your understanding; is that right?
23         A.  Well, yes.  It doesn't have any medical
24    information on the face sheet.
25         Q.  Judy Harkins reported to you in March of 2019,

## Page 50

1     right?
2          A.  Reported to me?
3          Q.  She was one of the employees that reported to you
4     or was a subordinate of yours?
5          A.  Oh.  Yes.  Yeah.
6          Q.  Okay.  And here it says that Judy Harkins
7     accessed on February 20th at 7:33 a.m. the medication
8     order list page.  Do you see that?
9          A.  Yes.
10         Q.  Would you agree with me that the medication order
11    list page likely has medical information that's
12    protected by HIPAA?
13         A.  It could.
14         Q.  Okay.  You didn't sit in on a reprimand meeting
15    with Ms. Harkins, did you?
16         A.  I don't believe -- not that I remember.  I'm
17    not sure.
18         Q.  If I told you that I've asked Corizon for
19    everyone that's been reprimanded and they told me that
20    Judy Harkins was not, would that surprise you?
21         A.  It would.
22         Q.  Ms. Ream, are there any questions that you'd like
23    to revisit?
24         A.  I don't think so.
25         Q.  Have you understood all of my questions?

## Page 51

1          A.  Yes, I think so.
2          Q.  Have you told me the truth today?
3          A.  Yes, I have.
4          MR. NUGENT:  Thank you.  I don't have
5     anything further.
6          THE WITNESS:  Thank you.
7          MS. JAG:  I have no questions at this time
8     either.
9          MR. MATULA:  I have no questions at this
10    time.  We'll have the witness read and sign and you can
11    send it through me.  Sterling, you're done.
12         THE WITNESS:  Okay.  Thank you.
13         MR. VIDEOGRAPHER:  That concludes today's
14    deposition of Sterling Ream.  We're going off the
15    record.  The time is 1:14 p.m.
16         [The deposition was concluded at 1:14 p.m.]
17
18
19
20
21
22
23
24
25

## Page 52

1               CERTIFICATE OF REPORTER
2     I, Joann Renee Richardson, CCR, for the State of
3     Missouri, do hereby certify that the deposition of
4     STERLING REAM was held on November 4, 2020, via
5     videoconference, State of Missouri, and was held on the
6     time and in the place previously described.
7
8     IN WITNESS WHEREOF, I have hereunto set my hand
9     and seal.
10
11
12         _____
13              Joann Renee Richardson, CCR
14
15
16
17
18
19
20
21
22
23
24
25

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 4:19-cv-00693-BP    Document 67-1    Filed 12/03/20    Page 15 of 24

## Page 53

1          ALARIS LITIGATION SERVICES

2     November 20, 2020

3     Mr. Michael L. Matula
       Ogletree Deakins
4     4520 Main Street, Suite 400
       Kansas City, Missouri 64111

5

       IN RE: TERRI YOLANDA LABLANCE v. MISSOURI
6         DEPARTMENT OF CORRECTIONS AND CORIZON HEALTH

7     Dear Mr. Matula,

8     Please find enclosed your copies of the deposition of
       STERLING REAM taken on November 4, 2020 in the
9     above-referenced case. Also enclosed is the original
10    signature page and errata sheets.

11

12    Please have the witness read your copy of the
13    transcript, indicate any changes and/or corrections
14    desired on the errata sheets, and sign the signature
15    page before a notary public.

16

17    Please return the errata sheets and notarized
18    signature page within 30 days to our office at 711 N
19    11th Street, St. Louis, MO 63101 for filing.

20

21    Sincerely,

22

23

24    Joann Renee Richardson

25

## Page 54

1          ERRATA SHEET
      Witness Name: STERLING REAM
2     Case Name: TERRI YOLANDA LABLANCE v. MISSOURI
         DEPARTMENT OF CORRECTIONS AND CORIZON HEALTH
3     Date Taken: NOVEMBER 4, 2020

4

5     Page #_____  Line #_____
6     Should read: _____
7     Reason for change: _____

8

9     Page #_____  Line #_____
10    Should read: _____
11    Reason for change: _____

12

13    Page #_____  Line #_____
14    Should read: _____
15    Reason for change: _____

16

17    Page #_____  Line #_____
18    Should read: _____
19    Reason for change: _____

20

21    Page #_____  Line #_____
22    Should read: _____
23    Reason for change: _____

24

25    Witness Signature: _____

## Page 55

1     STATE OF _____)

2     COUNTY OF _____)

3

4     I, STERLING REAM, do hereby certify:
5       That I have read the foregoing deposition;
6       That I have made such changes in form
7     and/or substance to the within deposition as might
8     be necessary to render the same true and correct;
9       That having made such changes thereon, I
10    hereby subscribe my name to the deposition.
11      I declare under penalty of perjury that the
12    foregoing is true and correct.
13      Executed this _____ day of _____,
14    20____, at _____.

15

16

17

18    _____

19     STERLING REAM

20

21    _____

22     NOTARY PUBLIC

23    My Commission Expires:

24    100180

25

ALARIS LITIGATION SERVICES
www.alaris.us     Phone: 1.800.280.3376     Fax: 314.644.1334
Case 4:19-cv-00693-BP   Document 67-1   Filed 12/03/20   Page 16 of 24

**A**
a.m 2:10 5:10
  50:7
above-refere...
  53:9
access 41:15
accessed 18:19
  19:1 23:13,16
  23:24 24:14
  25:1,2 37:11
  40:18 42:23
  44:8 49:14,16
  50:7
accessing
  22:24 24:16
  27:10 38:7
  39:14 43:12
  44:1 45:8,22
accurate 12:14
  27:13 40:14
acronym 9:22
  9:25
action 4:10,11,12
  4:13,14 17:8,9
  24:8 36:25
  40:3 42:10
  43:19 44:10,16
  44:25 48:5
actions 42:7
actual 11:21
administrator
  8:20,22 9:5,11
  9:13,20,22
African 14:9
  15:16 16:6
ago 10:20 21:1
  23:8
agree 5:25 6:7
  6:11 9:24 19:7
  39:11 44:4
  49:17 50:10
agreed 5:1 45:3
ahead 32:11
Alaris 3:21 5:19
  53:1
Amanda 35:1

Amanda's 35:2
American 14:9
  15:16
Americans 16:6
amount 22:10
and/or 46:1
  53:13 55:7
annual 13:10
answer 6:24
  7:11 20:8
  32:12,16
anybody 24:8
  24:10 27:23
  28:1 43:10,11
Apologies 41:19
appear 21:8
appearing 5:21
application
  11:22 37:21
applied 11:21
apply 11:20
  37:18
appropriate
  41:2,5,10,12,14
  42:19
approximately
  11:5 13:11 19:9
April 8:23 11:5
  35:10,12 37:15
  37:15
Ashton 36:7
asked 18:8
  32:10 37:4
  46:8,10 50:18
asking 10:14
  32:6
assistance 7:20
assistant 3:10
  35:7 48:8
Associate's
  14:12
assume 7:19
  38:9 45:3
  48:15
assumed 29:25
assuming 22:19
  26:12 28:16

attached 4:15
attorney 3:10
  32:15
attorneys 5:23
audit 49:13
Auditing 4:9
  18:16
August 19:7
aware 45:21
  47:9

**B**
B 4:5
back 26:23
  48:25 49:1,5
background
  47:4
bad 23:9
Baker 33:18
Barker 17:22
  19:6
basically 12:8
  47:8
Bates-labeled
  16:22 18:23
  36:23
becoming 8:18
  9:4
behalf 1:12 2:17
  6:3,6
believe 10:7
  13:11 14:24
  19:8,17,23
  20:8,10 21:21
  22:4 24:15
  25:15 26:19
  26:22 27:3
  27:20,21,25
  28:8 30:8
  32:20 34:19
  35:16,24
  40:24 41:12,14
  42:18 43:9,9
  43:13 44:17
  45:6 49:20
  50:16
better 25:20

big 10:17
birth 25:6
bit 20:5
boss 29:24
  30:5
bottom 16:16
  25:12 42:13
Bower 36:11
Bradley 35:20
Brandon 33:14
Brandy 33:18
  33:20
break 7:8,9,12
  48:18,19 49:5
bring 18:14
Burris 33:23

**C**
C 3:1
called 22:9,10
  22:12
calling 20:17,20
care 10:17
career 23:10
case 1:6 2:5
  5:13 6:22 7:1
  16:20 53:9
  54:2
Caucasian 14:3
cause 2:13
cc'd 27:2
CCR 52:2,13
Center 8:3 13:15
certain 2:13
CERTIFICATE
  52:1
Certified 2:12
  5:4
certify 52:3
  55:4
chances 46:24
Chandler 5:18
change 13:12
  54:7,11,15,19
  54:23
changes 53:13
  55:6,9

charge 11:17
charting 19:2,10
  20:16 49:17
Chillicothe 8:3
  13:15 14:2 16:7
  29:3 32:24
Chris 5:18
Christopher
  4:10 11:25
  36:7 38:16
  40:6,16,18,21
  41:6 42:9 43:2
  43:23 44:23
  45:25 46:2
  48:2
Christopher's
  40:2,11 41:25
  42:12
Cindy 38:1,2
City 3:4,8,11
  53:4
clarify 41:4
clear 20:5
clearly 7:7
close 7:6 10:8
  10:24 47:24
clue 18:7
collaborating
  47:5,9
colleagues
  15:16
come 10:3 12:9
  16:9 46:2
comes 16:8
coming 16:10
comments 21:4
Commission
  55:23
complaining
  31:1
complete 26:1
  38:24 39:1
computer 7:6
concern 29:13
concluded
  51:16
concludes 51:13

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 4:19-cv-00693-BP   Document 67-1   Filed 12/03/20   Page 17 of 24

conference
5:16 8:2
confirm 32:19
consent 6:3
considered 15:8
consuming 13:2
contain 49:21
continued
21:20
conversation
17:24 39:5
47:13,19
conversations
46:19 47:20
cook 14:24
copied 30:23
copies 25:17
53:8
copy 53:12
Corizon 1:7 2:6
2:16 3:6 5:2
6:7 8:10,11,25
13:14,24 14:2
15:19,20,25
16:6,7,22 18:4
23:12 24:3
25:13,13
26:25 28:10
29:2 32:24
33:6,21 35:4,8
36:23 39:22
41:22 44:7,20
45:21 50:18
53:6 54:2
corner 16:16
correct 8:17 10:1
13:13,16,19
14:7 17:16
20:10 28:6
30:6 37:14
40:9 55:8,12
Correctional
8:3 13:15
corrections 1:7
2:6,16 3:9
5:12 6:10 14:16
14:19 18:20

27:17 31:6
34:4,10 35:13
35:23 36:3
44:1 53:6,13
54:2
corrective 4:10
4:11,12,13,14
17:8,9 24:8
36:25 40:3
42:7,10 43:19
44:10,16,25
48:5
correctly 25:1
counsel 4:15
5:2,2
counseling 41:1
42:6,18
count 32:18
COUNTY 55:2
couple 33:4
37:4
course 19:16
court 1:1 2:1,12
2:14 3:20 5:4
5:14,21 6:4,13
7:4 8:5
criminal 19:16
19:22 20:7,12
31:9 47:4,14
cup 26:7,9,11
curiosity 19:17
36:17
curious 19:19
current 12:7
19:12 38:5,20
38:23 39:3
43:6
currently 8:1
cut 13:25

**D**

D 4:1
daily 32:25
date 5:9 25:6
27:8 40:13
54:3
day 2:11 19:13

46:17 55:13
days 53:18
Deakins 3:7
53:3
Dear 53:7
Deborah 4:13
33:4 43:20
December 8:14
8:15 11:5 19:1
19:21 20:6
22:5 27:15
28:5,23 29:3
29:6 31:9,13
37:11 49:16
decent 48:17
decision 40:23
declare 55:11
Defendant 3:6
Defendants 1:8
2:7,17 5:3
degree 14:12
demographics
13:20
dental 35:7
48:8,10,13
Department 1:6
2:5,16 3:9
5:12 6:10 14:15
14:19 18:20
27:17 31:6
34:3,10 35:12
35:23 36:3
44:1 53:6 54:2
deposition 1:11
2:8 5:3,10,15
5:20,25 6:7,11
6:22 15:12
16:21 17:1
18:22 25:9,14
36:21 51:14,16
52:3 53:8
55:5,7,10
depositions
16:20 18:22
25:8
described 7:1
52:6

deserved 23:11
desired 53:14
desk 26:2
desk' 26:3
Details 38:5,20
38:23 39:3
43:6
difference 42:2
different 11:1
12:8 34:17
direct 40:12
directed 47:10
directly 11:10
director 8:12,13
8:15,19 9:10,16
9:25 10:2 11:19
11:23
disagreed 43:11
disbelief 21:7
discipline 40:4
40:21 41:2,5,8
42:6,19 44:5
45:3,6
disciplined
40:6,8 45:8
discovered
46:7
discuss 21:24
47:11,16
discussed
27:22,25
28:18 30:24
39:4 43:7
discussing 31:4
31:8 40:16
District 1:1,2 2:1
2:1,14,14 5:14
5:14
Division 1:3 2:2
5:15
DOC 15:19 20:4
20:23 21:12
36:9,13,16
document 16:15
16:19 18:14,15
25:7 36:20
49:9

documents
16:14 17:1,3,5,7
17:14 37:1
DON 9:24 10:6
10:9,14,23 11:1
12:9
Doss 33:14
Dr 16:13 25:17
27:2 46:1,11,12
46:19,22
47:12,17,20,21
47:24 48:1
duly 6:16
Dustin 35:15,22
duty 17:12

**E**

E 3:1,1,11 4:1,5
earlier 48:5,12
education 14:11
either 51:8
Eleventh 3:22
else's 39:13
email 4:7,8
17:10,10,11,12
25:16,22
26:17,25
30:16,20,22
emailed 26:15
emails 17:10
26:14,20
employed
15:25 16:5
33:6,12,20
34:15 35:4
employee
34:24,25
35:23 36:3,9
employees 11:7
29:2,13 39:16
42:8 44:8,11
45:22 50:3
enclosed 53:8
53:9
ended 12:5
ensuring 13:6
entry 49:16

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 4:19-cv-00693-BP   Document 67-1   Filed 12/03/20   Page 18 of 24

Epperson 25:17
46:1,11,12,19
46:22 47:2,12
47:17,20,21,24
48:1
ER 19:13,15
20:24 21:20
errata 53:10,14
53:17 54:1
Eucadway 16:13
everybody
23:23 29:7
exact 32:5,11,18
EXAMINATION
4:2 6:18
examined 2:9
6:16
Executed 55:13
exhibit 4:6 16:21
18:23 19:4
25:9,13 27:9
36:21,24
39:20 41:17,19
41:22 43:15,17
44:18 49:10
Exhibits 4:15
expectations
38:24 39:4
43:7
Expires 55:23
expressing
47:6
expressly 5:6
extended 12:18
extending 48:13
extent 20:2

**F**
face 20:14,15
24:14,18 25:3
25:4 27:10
38:7 41:16
42:23 44:3
49:18,24
face-to-face
38:10
facility 13:18

32:25
fact 29:19 30:19
far 7:1
February 28:12
28:13,15,17
29:11 46:13,15
46:18 47:12,19
50:7
feel 23:7,9,11
24:19 29:5
41:1,4,9
felt 23:9
filing 53:19
Filled 37:21
find 53:8
fine 48:20
finished 17:18
first 6:16 7:4
12:21,24 15:2
20:11 26:25
35:17 41:1
42:5,18
flying 27:23
follow-ups 33:4
follows 6:17
foregoing 55:5
55:12
forgotten 29:11
form 4:10,11,12
4:13,14 32:10
40:3 42:10
43:19 44:25
48:6 55:6
forms 44:11,16
45:6
forward 30:16
forwarded
26:19,21 27:3
27:6
found 23:12,15
four 19:9
friends 47:7,25
48:1,3
Frizzell 4:14
33:10 45:1,4
48:6,7
front 7:6 16:15

16:18,23 18:15
25:8,10 39:20
41:17 43:15,17
44:18 49:10
fullest 20:2
further 51:5

**G**
General 3:10
getting 13:6
give 6:25 39:16
39:17 44:16
given 45:4,7
giving 40:4
go 32:11 48:20
49:15
going 7:12 11:1
16:14,21 33:2
41:4 47:11
48:16,21 51:14
good 6:2,20
46:25 47:7,24
48:1,3
Great 8:9 17:21
green 8:2
group 31:4
guess 10:16,22
guessing 20:17
20:19
guide 19:2,10
20:16 49:17

**H**
H 4:5
half 23:4,8
Hamilton 33:25
34:2
hand 52:8
handwritten
16:16
happened 23:8
happening 46:5
Harkins 17:13
24:1,5 30:24
30:25 31:3
49:25 50:6,15
50:20

heading 18:16
health 1:7 2:6,16
5:13 8:10,11,20
8:21 9:4,10,13
9:19,22 13:5,6
53:6 54:2
healthcare 6:7
13:14
hear 7:7 28:7,9
28:13 32:14
49:3
heard 12:13
27:24 28:4,22
30:17
hearing 7:4
28:3 30:11
held 5:15,20
9:9 52:4,5
help 16:9
helpful 32:22
hereunto 55:8
highest 14:11
HIPAA 24:18
38:25 39:1
49:21 50:12
HIPAA-protec...
24:16 25:5
hired 9:7 15:6
Hispanic 14:9
home 13:2
Hopefully 6:22
hoping 6:24
hour 48:17
hours 2:10 22:5
housekeeping
7:3
HSA 9:22 10:5
10:23 11:2,4,14
11:17 12:6,7,9
13:10 19:12
37:16,18
hurt 47:6
husband 34:23

**I**
identified 16:20
identify 36:24

impression 21:3
21:5,7
incident 17:21
19:6 26:15,18
38:6,20,23
39:4 43:6
including 15:23
increase 10:3,5
10:9,13,18,19
10:20
indicate 53:13
individuals
18:19 23:19
39:14 49:14
information
24:16 25:2,5
49:21,24 50:11
initially 10:7,10
26:23 28:23
inmates 13:15
institution 12:8
13:21 16:9
interview 37:23
interviewed
37:25 38:1
introduce 5:24
involving 17:22
issued 38:3
it'll 8:14
Ivan 3:3 6:2,20
48:16

**J**
Jag 3:10 6:9,9
51:7
January 18:20
28:13,15
Jeff 36:1
Jenni 18:1,3,4
Jenni's 18:1
Jenny 3:14 11:15
25:17 27:2
30:8,9,10,23
38:1,2,4,16
40:24 44:13
44:15
Jerry 4:8 25:17

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 4:19-cv-00693-BP   Document 67-1   Filed 12/03/20   Page 19 of 24

27:2
Jessica 4:14
　33:10 45:1
　48:6
Joann 2:11 3:21
　5:4,17 52:2,13
　53:24
job 9:9 11:9 12:1
　12:3 13:2,4
Johnson 4:12
　34:7 42:10,20
　42:25 43:4
Judy 17:11,13
　24:1 30:24,25
　49:25 50:6
　50:20
June 9:1,2,7
　27:8,15 30:15

**K**

K-O-E-N-I-G
　34:20
Kansas 3:4,8,11
　53:4
Kelley 12:12
kids 13:2
Kirby 25:18 46:1
　46:19
knew 29:25
　30:3 46:8,10
　47:13
know 7:8 10:18
　12:18 13:8,20
　15:18 16:10
　17:18 19:13,21
　19:24,25 20:1
　20:2,3,3,7,8
　23:10,12,19,22
　24:1,5,19 26:11
　26:12 27:5
　28:19 29:4,10
　30:3,3,13 31:3
　31:8,16,18,19
　31:21,22,23
　31:24 32:3,5,6
　32:18 33:3,4,8
　33:10,14,16,18

33:20,23,25
　34:2,7,9,12,13
　34:18,22 35:8
　35:10,15,16,17
　35:21,24 36:1
　36:6,12 40:25
　42:1,2 44:7
　45:15,24 46:6
　47:8 48:14
knowledge
　40:17
known 47:15
Koenig 34:18
　35:3,8
Krigel 3:3,3

**L**

L 3:6 53:3
lab 25:25
　30:25
labeled 25:9
LaBlance 1:4
　2:2,15 5:11 6:3
　6:21 15:2,5,15
　15:23 16:1,3,5
　17:22 19:6,11
　19:22 20:7,12
　22:1 25:16,23
　28:10,12 30:15
　30:24,25 31:5
　47:13,21 53:5
　54:2
LaBlance's
　18:19 19:2 21:4
　21:12,15 22:25
　27:10,16 31:9
　34:3,10 36:18
　37:12 39:14
　40:18 43:12
　44:1,8 45:9
　46:3,20,23
　49:14
lastly 7:19
learned 20:12
　21:11
leave 12:4,5,6
　12:14

leaving 28:10
left 12:1,4 16:10
　18:6 28:12
legal 5:18
let's 12:20 17:9
　48:20
level 14:11
　40:20 41:2,5
　41:8,10,13,14
　42:19 44:4
　45:3
lid 26:11
life 13:2
line 41:23 42:1
　43:21 44:21
　48:7 54:5,9,13
　54:17,21
list 18:18 19:2,10
　20:16 34:17
　49:17 50:8,11
Litigation 3:21
　5:19 53:1
little 10:17 13:1
　20:5 48:18
locations 6:5
log 4:9 18:16
　49:13
long 6:23 8:13
　23:17 29:8,9
longer 12:6 16:5
look 17:3
looked 17:15
　20:13 21:25
　36:16,18 44:7
　48:5 49:10
looking 19:4,10
　27:9 38:5
Lori 33:16
lot 13:1,9
Louis 3:22
　53:19
Lovelace 4:8
　25:17 27:2
LPN 9:8,11
LPNs 11:10
Lybarger 35:15
　35:22

**M**

Main 3:4,7 53:4
majority 14:2,4
management
　9:14
manager 9:16
　13:5
manager's
　41:23 43:21
　44:21 48:7
manner 6:1,8,11
March 18:21
　23:2 37:5
　38:19 49:25
marked 36:21
married 14:13
matter 5:11
Matula 3:6 6:6
　6:6 32:10
　48:16 51:9
　53:3,7
McWhorter 4:7
　18:10 21:2,8,11
　21:15,19,23
　30:5 31:10
McWhorter's
　21:3 30:7
MDOC1942
　18:24
mean 10:25
　11:10 14:9
　15:19 16:8
　20:3,21 23:9
　23:11 24:17
　28:25 29:20
　30:1
medical 18:19
　41:15 49:23
　50:11
medication
　50:7,10
Meehan 3:14
　7:20 11:15
　25:18 30:23
　38:2,4,9,16,18
　39:5,8 44:13

44:15
meet 15:2
meeting 38:12
　38:19 50:14
Megan 33:8
mention 13:7
　27:24
mentioned
　13:13 20:25
　46:1
met 38:9 42:25
Michael 3:6
　53:3
mid 46:13,15,18
　47:12,19
middle 22:15
　42:15
Mike 6:6
Mindy 36:5
mine 24:24
minimal 10:12
minute 22:13
Missouri 1:2,6
　2:1,5,13,15 3:8
　3:11 5:12,14
　52:3,5 53:4,5
　54:2
misunderstood
　29:17
MO 3:4,22
　53:19
MOCIS 22:1
　32:25 46:4,6
moment 20:25
months 10:20
　19:9 27:11
morning 6:2,20
　45:25

**N**

N 3:1 4:1 53:18
name 5:17,18
　6:20 12:11
　16:12,13 18:2
　18:24 20:21
　22:3,4 34:20
　35:2 36:1 54:1

ALARIS LITIGATION SERVICES
www.alaris.us　　　　Phone: 1.800.280.3376　　　　Fax: 314.644.1334
Case 4:19-cv-00693-BP　Document 67-1　Filed 12/03/20　Page 20 of 24

54:2 55:10
names 14:21
  31:8 33:3
  34:17 35:17,17
  36:13
necessary 55:8
need 7:8 13:7
needed 22:7,9
never 23:9
Nicholas 34:18
  34:22
non-patients
  45:23
non-providers
  11:16 48:10
North 3:22
NOS 4:6
notarized 53:17
notary 53:15
  55:22
notice 12:4,5,6
  12:14,21,24
notified 38:7
November 1:13
  2:9 5:9 52:4
  53:2,8 54:3
Nugent 3:3 4:3
  6:2,2,19,20
  32:12 48:19
  49:3 51:4
number 20:4
  20:22,23
  22:3,4 32:3,5
  33:3
nurse 9:6 15:7
  29:18,19 30:1
  32:24 37:12
nurses 13:8
  27:24 28:19
  28:20 31:12,13
  31:15,17,22,25
  32:2,17,19
  34:3,9
nursing 8:12,13
  8:15,19 9:10,16
  9:25 10:2 11:19
  11:23

O
oath 49:6
Object 32:10
objection 32:15
obligated 8:6
obviously 24:19
offer 39:8
office 26:2
  38:13 46:2,24
  47:10 53:18
Ogletree 3:7
  53:3
Oh 50:5
okay 7:13,14
  9:24 10:11,17
  10:21,25 11:4,9
  11:23 12:16
  13:23 14:11
  15:5,21 17:21
  19:1,9 20:11,24
  21:8,22 22:7
  23:7 24:1,9,25
  26:13 27:8
  28:9,18 29:2
  30:10,22 31:12
  31:17,19,24
  32:23 33:16
  34:7,15 35:10
  35:22 37:10
  37:21 38:5,18
  40:2,16 41:8
  41:17,25 42:9
  44:4 45:11,21
  46:18 47:2
  48:1 49:5,13
  50:6,14 51:12
opinion 24:9,22
order 50:8,10
original 53:9
outside 15:15
  36:14 39:3

P
P 3:1,1
P.C 3:3
p.m 2:10 22:15
  48:22 49:2

51:15,16
page 4:2,6
  16:22 18:23
  19:2,10 20:14
  20:15,16
  23:23 24:14
  24:18 25:3,4
  49:17 50:8,11
  53:10,15,18
  54:5,9,13,17
  54:21
paragraph
  38:22
Parque 36:1
part 13:25 28:19
  31:3 40:20
parties 5:24
Pat 30:9,10
patient 13:13
  24:24
patients 13:23
  13:24 14:2
pay 9:20 10:3,9
  10:13,24 11:1
penalty 55:11
pending 2:13
people 27:24
  29:22 45:19
percent 14:5,6
  14:8
perjury 55:11
person 11:17
  20:24 35:18
  35:24 36:6
Philip 36:11
Phonetic 16:13
  36:1
physician 47:5
  47:9
pick 7:7
picture 20:22
place 6:1 47:18
  52:6
Plaintiff 1:12 2:3
  2:15,17 5:2 6:3
Plaintiffs 1:5 3:2
please 5:23

6:13 36:24
  53:8,12,17
point 37:13
population 13:6
  13:13
position 9:13,14
  9:16,17 10:6,9
  10:23 11:1,2,20
  37:18,19,23
positive 35:18
  47:1
possibly 34:5
practitioner 15:7
preparation 17:1
prepare 18:9
present 3:14
  5:23 17:24
  21:14 26:14
  38:12 44:11,15
  46:22
presented
  44:10
Preston 18:3,4
pretty 45:13
previous 19:4
previously 16:19
  18:22 52:6
prior 7:12 8:4,18
  9:4 11:23
  15:25 16:2,3
  16:25 17:15
  19:21 20:6
  25:8,14 28:9
  28:14 37:2
  46:18 47:19
PRN 9:6 22:6
probably 14:5
  15:3 23:11,23
  28:15 29:12
  30:1,12 32:8
  46:13 48:14
proceed 6:14
proceeding 6:8
produced 2:9
  6:16
protected 50:12
provider 15:8

16:8
providers 11:11
provides 13:14
public 53:15
  55:22
purposes 16:18
put 12:4,4,6,13
  12:20,24 16:18
  25:7
putting 12:21

Q
question 7:12,17
  14:1 20:5,6
  29:17 32:16
questions 6:19
  6:24 7:15
  32:11 37:4
  43:8 49:8
  50:22,25 51:7
  51:9
quick 49:15

R
R 3:1
Rachel 3:10 6:9
  34:13
racial 13:20
raise 9:20
rate 10:24
read 17:17,19
  18:11 36:13
  38:21,22 43:6
  51:10 53:12
  54:6,10,14,18
  54:22 55:5
really 10:17
  12:19 19:17
  25:19 49:15
Ream 1:11 2:8
  4:11 5:11 6:15
  6:20 15:12
  16:14 25:7
  26:13 33:2
  36:16 49:3
  50:22 51:14
  52:4 53:8

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 4:19-cv-00693-BP   Document 67-1   Filed 12/03/20   Page 21 of 24

54:1 55:4,19
**Reason** 54:7,11
  54:15,19,23
**rebuttal** 39:8
**recall** 15:5,21
  18:8 26:5,17
  27:16 39:7,18
  43:4,14 45:7
  46:4
**receive** 9:20
**received** 24:8
  37:5 40:21
  41:9
**receiving** 25:22
**recommending**
  40:20
**record** 5:8 16:18
  19:16,22 20:7
  20:12 23:13
  31:6 32:16
  37:12 41:15
  46:8 47:14
  48:20,22,23
  48:25 49:2
  51:15
**records** 18:19
  21:4,12,15
  22:25 27:17
  27:19 31:9
  34:4,11 36:17
  36:18 39:15
  40:18 43:12
  44:2,8 45:9
  45:22 46:3
  46:20,23 47:3
  49:14
**refer** 25:4
**referenced**
  48:12
**referring** 20:25
**refused** 25:25
**regards** 28:2
  29:20 31:4,12
  40:4
**regional** 47:10
**related** 16:20
  26:15,18

**relatives** 14:18
**relevant** 30:19
**rely** 7:20
**remember** 12:19
  12:21 16:11
  17:21 18:6
  23:25 25:22
  28:1 29:1,10
  37:25 49:15
  50:16
**Rempel** 34:13
**render** 55:8
**Renee** 2:11 3:21
  5:4 52:2,13
  53:24
**report** 11:13
  15:10 30:4
  45:19 48:10
**reported** 49:25
  50:2,3
**reporter** 2:12
  3:20 5:5,21
  6:4,13 7:4 8:5
  52:1
**reporter's** 5:17
**represent** 5:24
  6:21 18:18
**reprimand** 38:3
  39:13 40:11
  50:14
**reprimanded**
  40:13,17 50:19
**reprimands**
  40:14
**requisition** 26:1
**reserved** 5:6
**response** 19:5
**responsible** 11:6
**rest** 14:10
**result** 39:14
**Results** 18:16
**retained** 4:15
**return** 53:17
**reviewed** 16:25
  25:14 37:1
**reviewing** 39:3
**revisit** 50:23

**Rex** 33:8
**Rhodes** 36:5
**Richards** 35:20
**Richardson** 2:11
  3:21 5:4,17
  52:2,13 53:24
**right** 7:3,23 8:1
  12:22,23 13:18
  15:21 16:23,25
  17:17 18:8 19:2
  20:9 21:18
  22:1,2,25
  23:2,5 24:12
  24:20,21 25:3
  25:3,12 26:5
  27:1 30:5 31:1
  33:2 36:23
  37:4,6,11,13,16
  38:10,24
  42:16 43:19
  44:13,14 45:1
  45:20 47:14
  48:8,9 49:22
  50:1
**right-hand** 16:16
**Ritter** 4:13 33:4
  43:20,25
  44:5
**RN** 9:6,11
**RNs** 11:10
**role** 11:4
**room** 5:22 7:21
  7:23 8:2 21:17
  43:1
**rumor** 27:23
  29:14
**rumors** 28:2,3,7
  28:9,13,18,22
  30:11,17 31:5
  48:12,13

_____
**S**
_____

**S** 3:1 4:5
**safe** 11:16 24:9
  27:5
**salary** 13:10
**sat** 26:2 40:14

42:5
**saw** 48:6
**saying** 25:1
**says** 25:25
  30:23 39:23
  42:23 50:6
**scheduled**
  22:13
**Schupp** 38:1,2
**screen** 36:20
**scroll** 26:22
**scrolled** 25:12
  26:13
**seal** 52:9
**search** 18:16
  22:3
**second** 25:20
**Secondly** 7:7
**section** 38:6
**see** 16:15,23
  17:9 18:15,24
  20:15 25:9,18
  25:25 26:4,14
  30:22 36:21
  39:20,22
  41:17,19 43:15
  50:8
**see-through**
  26:9
**seen** 13:24 14:2
**send** 51:11
**sends** 30:15
**sense** 11:12
**sent** 27:8
**separate** 6:4
**services** 3:21
  5:19 8:20,21
  9:5,10,13,19
  9:22 13:5,7,14
  53:1
**session** 42:6
**set** 52:8
**seven** 27:11
**Shannon** 33:23
**share** 46:24
  49:9
**shared** 38:13

46:3
**she'd** 30:3
**sheet** 27:10
  38:7 41:16
  42:24 44:3
  49:18,24 54:1
**sheets** 53:10,14
  53:17
**Sherry** 14:22
**shift** 22:13,16,18
  22:21,22
**shifts** 22:10
**short** 49:5
**shorthand** 5:4
**shortly** 15:3
**show** 16:14
**showed** 27:10
**shows** 49:16
**sign** 51:10 53:14
**signature** 5:6
  37:8 39:23,25
  41:23,25 42:1
  42:12 43:20
  43:21 44:20
  44:21 48:6,7
  53:10,14,18
  54:25
**signed** 42:11
**Sincerely** 53:21
**sit** 26:3 39:13
  40:4,10 50:14
**site** 11:11
**six** 17:8
**small** 25:19
  26:7
**socialize** 36:14
**software** 22:1
  32:25
**Somebody**
  32:13
**sorry** 10:14 11:3
  13:25 16:2
  19:25 26:22
  32:13
**sounded** 12:13
**specific** 22:10
**specifically** 29:1

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 4:19-cv-00693-BP   Document 67-1   Filed 12/03/20   Page 22 of 24

specimen 26:1
  26:5
spelled 34:20
spouse 14:15
spread 31:5
St 3:22 53:19
staff 9:6 29:18
  29:19,25 32:3
  37:12 48:13
staffing 13:9
start 8:25 12:20
  16:21 28:2
started 15:4
  35:8
starting 8:4
State 2:12 52:2
  52:5 55:1
statement 17:18
  18:9,11 19:5
States 1:1 2:1,14
  5:13
stating 26:2
staying 12:5
Sterling 1:11 2:8
  4:11 5:11 6:15
  51:11,14 52:4
  53:8 54:1
  55:4,19
stick 46:15
stipulate 6:10
STIPULATED
  5:1
stipulation 5:25
Street 3:4,7,11
  3:22 53:4,19
stress 13:1,1
stressful 13:4
subordinate
  50:4
subscribe 55:10
substance 55:7
Suite 3:4,7,11
  53:4
supervise 11:9
supervising 11:6
supervisor 11:11
  26:20 30:2,2

30:7 40:12
  42:3
supervisors
  30:14
sure 7:5,10 11:21
  12:17 14:1,10
  19:14 22:14,20
  24:7 27:4,21
  30:8 31:16
  32:21 34:5
  37:10 40:24
  45:13 46:25
  48:14 50:17
surprise 50:20
surprised 19:16
  21:9
surprising 23:15
  23:17
swear 6:13
Switzer 33:16
sworn 2:9 6:16
  8:4
system 46:4,7

T

T 4:5
Tabitha 4:12
  34:7 42:5,9,19
  42:25 43:1
take 6:21 7:8
  48:19
taken 1:12 2:17
  5:3 6:11 15:12
  53:8 54:3
talk 27:24
talked 12:7 46:3
talking 29:5,14
  29:22,24
  32:13 34:3,10
  45:25 46:22
Tammie 4:10
  11:25 38:13,14
  38:16 40:2
  41:25 42:3,7,9
  42:12 43:2,23
  44:17,23
  46:24 48:2,4

tech 25:25
  30:25
technical 10:25
tel 3:5,8,12
tell 7:16 8:5,6
  14:21 19:11
  21:11,22 24:7
  24:12 27:19
  30:16 38:6,18
  40:10 45:12
  47:2
ten 31:13 32:7
  32:20
Teresa 4:7 18:10
  21:2 30:5,7
  33:25 34:2
Terri 1:4 2:2,14
  5:11 6:3,21
  15:2 17:11,12
  25:16 26:24
  27:8 30:15
  47:7,24 53:5
  54:2
Terri's 19:15
  46:17
testified 6:16
testimony 7:1
  24:25 49:20
Thank 6:12
  18:14 32:22
  38:3 51:4,6,12
thereon 55:9
thing 24:20,21
  40:7
things 7:3
think 8:24 10:8
  11:22 15:21
  17:10,10 24:7
  24:17 26:23
  27:14,22
  28:16 30:12
  31:14 34:21,23
  35:18,25
  38:14,14 42:15
  45:12 47:18
  48:4,18 50:24
  51:1

thought 12:10
three 15:23
time 5:9 12:21
  12:25 19:12
  20:11,13 22:11
  28:4,25 29:13
  29:18,20,24
  30:8,12,14
  32:4 37:17
  38:14 40:12
  46:17,17 48:17
  48:18,22 49:2
  51:7,10,15
  52:6
timeline 37:10
times 7:5
Tipton 12:12
title 8:18 9:4
  15:6 35:6
titles 9:9 11:9
today 6:25 8:7
  16:25 17:15
  18:11 25:14
  37:2 51:2
today's 5:9,19
  51:13
told 21:15,19,23
  21:25 26:2
  27:16 29:25
  30:1,10 35:22
  44:11,16 47:6
  50:18,19 51:2
top 18:24
total 17:8
training 38:25
  39:1
transcribed 55:5
transcript 53:13
tried 25:7
trouble 7:4
true 19:20 55:8
  55:12
trust 7:16
truth 8:5,6 51:2
trying 10:23
twice 12:14,18
two 15:22,25

17:10 47:22
type 20:22
typewriting 5:5

U

Uh-huh 18:25
  27:12
underneath
  39:17
understand
  6:25 7:15,16
  8:6 10:16 32:5
  49:6
understanding
  24:12,25
  49:22
understood
  50:25
United 1:1 2:1,13
  5:13
universe 17:14
urine 26:6
utilize 32:25

V

v 53:5 54:2
Val 46:1 47:23
Valicia 25:18
vary 22:12
video 5:15
video-recorded
  5:10
videoconfere...
  1:11 2:8,11 5:20
  52:5
videographer
  5:8,18 6:12
  48:21 49:1
  51:13
violation 24:18
vs 1:5 2:4 5:12

W

walking 19:14
Walsh 14:22
want 8:23 10:18
  17:17,17 18:14

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 4:19-cv-00693-BP   Document 67-1   Filed 12/03/20   Page 23 of 24

28:25 34:17
47:16 49:15
wasn't 11:10
24:21,23
26:23 47:6,11
way 36:17
We'll 51:10
We're 48:21
49:5 51:14
we've 48:16
49:10
WebEx 5:15
weren't 30:13
32:2
Western 1:2,3
2:1,2,14 5:14
5:14
whatnot 28:19
WHEREOF 52:8
white 13:24 14:3
14:6
witness 5:6,21
6:4,13 39:23
42:1 51:6,10,12
52:8 53:12
54:1,25
Wolf 35:10
woman's 13:18
work 8:9 14:15
14:18 18:4
21:21 24:3
35:12
worked 12:7
16:7 22:7,9
24:23
working 8:25
19:12 21:20
22:20
workplace
36:14
wouldn't 22:4
48:3
write 26:17
write-up 39:6,9
39:11
write-ups 39:17
written 11:22

22:24 23:2,7
23:10,20,22
24:6,10,13,15
41:1 42:6,18
43:5,12,25
45:22
wrong 13:14
45:16
wrote 18:12

**X**

X 4:1,5

**Y**

Yeah 27:1
28:24 50:5
year 8:14 23:4,8
Yolanda 1:4 2:2
2:15 5:11 53:5
54:2

**Z**

Zoom 3:14

**0**

**1**

1 18:20
1-800-280-33...
3:23
1:02 48:22
1:10 49:2
1:14 2:10 51:15
51:16
100 31:24 32:1,2
100180 55:24
1003 41:22
1004 44:20
1005 39:22
1006 36:23
11 22:20
11:36 2:10 5:10
11th 53:19
12 4:7 16:16,21
13th 3:11
15 4:8 25:9,10
25:13
16 4:7

17 27:15 29:3
18 4:9

**2**

20 9:2 12:22
28:21 31:15
32:9,17,21
53:2 55:14
2010 9:1,3,7
2017 15:3 18:12
18:21 19:1,7
20:6 22:5
28:5 29:6
31:10,12,13
37:11
2018 8:24 11:5
27:9,15 28:7
30:15 37:15
2019 8:16 11:6
12:22,24 18:21
23:2 28:12,13
29:11 37:6
49:25
2020 1:13 2:9
5:9 52:4 53:2
53:8 54:3
20th 50:7
23 25:13 26:25
24 25:13 26:25
25 4:8 37:5
25th 38:19

**3**

3 18:23 22:20
22:23,23
3-to-11 22:21
30 31:17 53:18
314 3:23
36 4:11
39 4:10

**4**

4 1:13 2:9 5:9
18:23 52:4
53:8 54:3
4:19-cv-00693
5:13

4:19-cv-0069...
1:6 2:5
4:46 22:15
40 31:20
400 3:7 53:4
401 3:11
41 4:12
43 4:9,13 18:23
27:9 49:10
44 4:14
45 4:10 39:20
4520 3:4,7 53:4
46 4:11 36:21,24
41:17
47 4:12 41:20
41:22
48 4:13 43:15,17
49 4:14 44:18

**5**

50 14:5,6,8
31:22

**6**

6 4:3 27:15
6:45 22:23
615 3:11
63101 3:22
53:19
64106 3:11
64111 3:4,8 53:4
644-2191 3:23
6th 27:8

**7**

7 22:23
7:33 50:7
700 3:4
711 3:22 53:18
79 13:11,12

**8**

816)471-1301
3:8
816)756-5800
3:5
816)889-5000

3:12
8th 18:21

**9**

9 16:22 19:1
9th 19:21 20:6
49:16

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 4:19-cv-00693-BP   Document 67-1   Filed 12/03/20   Page 24 of 24