IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TERRI YOLANDA LABLANCE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. 4:19-cv-00693-BP |
| CORIZON HEALTH, INC. AND MISSOURI DEPARTMENT OF CORRECTIONS, | ) ) ) ) |
| Defendant. | ) ) |

**DEFENDANT CORIZON HEALTH, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

LaBlance's Opposition does nothing to defeat summary judgment. It is largely based on LaBlance's personal subjective, speculative assumptions, which unreasonably construe facially race-neutral conduct as being racially motivated. LaBlance wrongly equates conduct that may relate to her criminal history as being inherently racial. Courts in many contexts have ruled that is not true. For instance, concisely put by the Firth Circuit: "Persons with criminal records are not protected by Title VII . . . ."[1]

LaBlance's subjective beliefs to the contrary, however, are just that—subjective and unsupported. LaBlance has not come forward with evidence that make it reasonable to infer any such thing. If the evidentiary record was different, perhaps a race claim could be made. For instance, if the evidence was that there were both an African-American employee and a non-African-American employee with criminal records and upon learning this information, an employer or co-workers treated one but not the other differently, then perhaps that would trigger

---

[1] *Manley v. Invesco*, 555 F. App'x 344, 348 (5th Cir. 2014).

legal protections of Title VII or 1981 (assuming the differing treatment still rose to the level of being sufficiently severe or pervasive to be actionable). But that is not this case here. LaBlance has come forward with no evidence – either direct or circumstantial – that suggests that the facially-race neutral conduct of other Corizon (or DOC) employees was motivated by her race. She has not identified a "similarly-situated" comparator who was treated more favorably. Nor has she offered evidence to suggest that her fellow employees, upon learning of a co-worker with a criminal history, would have behaved differently. While LaBlance may assume that all of "rural America" are racists (her words), that disparaging notion is neither fair nor reasonable.

As the non-movant, LaBlance is entitled to *reasonable* inferences from the evidence; she is not entitled to *unreasonable* ones. "Although a district court must rule on a motion for summary judgment after viewing the facts in the light most favorable to the non-moving party, it is not required to "accept unreasonable inferences or sheer speculation as fact."[2] As sheer speculation is all LaBlance offers in her Opposition, summary judgment should be granted in full.

## I. DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS STATEMENTS OF UNCONTROVERTED FACTS

A chart reflecting Defendant's Reply to Plaintiff's Response to Defendant's Statement of Uncontroverted Material Fact as **Exhibit A**.

## II. DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENTS OF ADDITIONAL FACTS

A chart reflecting Defendant's Responses to Plaintiff's Additional Statements of Material Fact is attached as **Exhibit B**.

---

2   *Reed v. City of St. Charles*, 561 F.3d 788, 791 (8th Cir. 2006).

In substance, LaBlance's lengthy but immaterial "Statement of Additional Material Facts" creates a misleading, unsupported narrative implying that before she quit, discriminatory events influenced her decision to resign.

Much of LaBlance's "argument" relates to the fact that apparently, unbeknownst to LaBlance at the time, several employees had discovered her criminal history. However, LaBlance admits that she was not aware that Corizon employees had accessed her criminal D.O.C. record until *after* her employment ended. (Pltf's SOF 16, 85-89). Indeed, LaBlance admits that perhaps there were "signs she should have picked up on," but she did not until after she resigned. (Pltf's SOF 24). Perhaps more significant than the after-the-fact nature of her harassment/constructive discharge arguments, she makes the unreasonable inference that her race had anything to do with what occurred. The relevant timeline and material facts remain uncontroverted:

- Corizon hired LaBlance as an advanced registered nurse practitioner, with full awareness at the time of hire that LaBlance had a criminal record prior to the obtainment of her nursing degree. (Dft's SOF 2; Pltf's SOF 1, 6, 7). LaBlance's criminal history did not affect Corizon's decision to offer her employment, nor did it prevent LaBlance from cultivating good relationships with her co-workers, whom she considered friends. (Dft's SOF 3).

- A co-worker used the phrase "n- word rigged" during a conversation with LaBlance. The event was reported to Corizon management by another co-worker, not LaBlance. Immediately upon notification, the Health Services Administrator investigated the claim, obtained a statement from LaBlance among several others, and the alleged offender was terminated the very next day. (Dft's SOF 5, 6, 8, 9).

- LaBlance had never heard any racially inappropriate language at Corizon, nor did LaBlance hear any racially inappropriate language at Corizon again after that day. (Dft's SOF 7, 10).

- LaBlance only made one complaint of discrimination during her employment at Corizon, which was made over a year after the employee who used inappropriate language had been fired. She alleged that a lab technician required her to fill out requisition forms that she did not require other, Caucasian providers to complete. (Dft's SOF 12). LaBlance attempts to controvert the fact by admitting that she did indeed complain about the disparate treatment she received vis-à-vis the other white

3

providers, but then unsuccessfully attempts to split hairs by arguing that Corizon's investigation into the very complaint LaBlance admitted she made "misses the point." (*See* LaBlance's Resp. to Dft's SOF at 12-16).

- Dft's SOF 15-16 confirms that (1) the other Caucasian providers filled out requisition forms, and that the lab technician did not single out LaBlance, and (2) that every request made by LaBlance had in fact been run by the lab technician in question. These facts are uncontroverted by LaBlance, and her arguments that they "miss the point" are insignificant and cannot create a genuine issue of material fact.

- LaBlance resigned her position, gave the reason for her termination as travel related, and had accepted another job at the time she turned in her resignation. (Dft's SOF 20, 21, 22). It is further uncontroverted that between the date of her resignation and her last day of work, she never mentioned or had discussions with Corizon regarding race discrimination, harassment or retaliation. (Dft's SOF 27)[3].

Further, a careful review of the "additional facts" set forth in LaBlance's Opposition shows they are frequently unsupported by the evidence cited, or supported only by LaBlance's self-serving or speculative assertions, or are otherwise misleading.

### III. DEFENDANT'S RESPONSE TO PLAINTIFF'S LEGAL ARGUMENTS

**A. Summary Judgment Is Appropriate On Counts I And II: Lablance's Claims Of Race-Based Hostile Work Environment-Constructive Discharge**

**1. LaBlance Cannot Establish a *Prima Facie* Case of Hostile Work Environment.**

None of LaBlance's additional facts reasonably support any inference that her race was the underlying motivation of any alleged discriminatory actions she claims. Furthermore, even a few, facially race-neutral events still falls far below the high standard she needs to establish an

---

[3] Though not relevant to LaBlance's claims of racial discrimination or retaliation, LaBlance admits that after her employment ended, she received a letter from a former Corizon co-worker, at which time she became aware that the co-worker and another former co-worker may have shared the information in her D.O.C. records with other Corizon and D.O.C. staff. (Pltf's SOF 85, 86). During her employment, however, LaBlance was not aware that her co-workers had accessed her D.O.C. medical records. (Pltf's SOF 16). It was the investigation, which occurred after LaBlance's employment ended, that revealed that employees had accessed her medical records. (Pltf's SOF 89).

actionable hostile work environment[4]. Nor does LaBlance's Opposition establish that the any of this conduct was because of her membership in a protected group.

LaBlance's argument that she was the only African-American employee at Corizon at the time does nothing to prove her case. "[S]imply being the lone member of an identifiable racial or ethnic minority within a supervisor's chain of command, without more, does not demonstrate racial animus."[5]

There is no dispute that during LaBlance's employment, she experienced a single instance of overt racism, to which Corizon responded by immediately terminating the offending employee. She admits that the termination of the offending employee "was the end of it." (Dft's SOF 9). It is also an uncontroverted fact that LaBlance testified that she was never threatened with physical violence in any way while she worked at Corizon. (Dft's SOF 28). LaBlance's attempt to discredit Corizon's prompt remedial action and fabricate a "culture" of racial bias is both unsupported by the record and an illogical conclusion from the series of events, which demonstrates Corizon's zero-tolerance policy for discrimination. LaBlance was not even the person who complained about the incident; Corizon management had been notified about the incident by another employee, not LaBlance. (Dft's SOF 6, 8, 9).

The only time in her years at Corizon that LaBlance complained about alleged discrimination occurred many months later. In that case, it is uncontroverted that Corizon investigated her complaint by speaking with others aware of the situation. LaBlance's claims were not corroborated as the evidence showed that the lab technician did not make requests of

---

4   *Ellis v. Houston*, 742 F.3d 307, 319 (8th Cir. 2014) (elements for hostile work environment).
5   *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005); *Garcia v. Hy-Vee, Inc.* 2009 WL 10703056, at *7 (S.D. Iowa Oct. 16, 2009) ("While it is true that harassment need not be explicitly racial in order to be probative of a hostile work environment, it is equally true that not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belong to a racial minority.").

LaBlance that were not also made of the other Caucasian providers, and that all of LaBlance's requests to the lab technician were completed. (Dft's SOF 14-16). LaBlance may have been "unsatisfied" with the results of the investigation, however she cannot controvert the fact that an investigation occurred into the exact issues LaBlance raised in her complaint. *Id*.

The additional, isolated incidents LaBlance identifies as creating the "bad culture" of Corizon are neither facially racial nor sufficient severe or pervasive enough to sustain her claims. LaBlance's grievances, limited in number and all involving facially race-neutral events, fail to establish harassment "so intimidating, offensive, or hostile that it poisoned the work environment."[6] "To be actionable, the conduct complained of must be extreme in nature and not merely rude or unpleasant."[7]

Even if LaBlance's additional claims of harassment were true, her allegations amount to no more than increased scrutiny and remarks based on her (post-employment) realization that Corizon employees knew her criminal record, and are insufficient to overcome summary judgment[8]. LaBlance's repeated assertions that—unbeknownst to her at the time—co-workers may have gossiped about her criminal record is not in and of itself evidence of racial discrimination as she cannot point to any evidence on the record that such gossip would not have occurred had she been Caucasian[9]. Indeed, it is hardly surprising that employees (of any race) working at a prison who learn that one of their fellow employees has a criminal history (and may have records in the inmate database) may engage in gossip and look at the employee differently.

---

[6] *Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 846 (8th Cir. 2006).
[7] *Id*.
[8] *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 809 (8th Cir. 2008) (holding verbal harassment and increased scrutiny were insufficient for a race-based hostile work environment claim).
[9] *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 518 (6th Cir. 2009) (where plaintiff did not allege hearing a single remark that reflected discrimination directed towards her based on race, she did not offer sufficient evidence to establish prima facie case of hostile work environment).

That is not to say such behavior is appropriate, but it is hardly reasonable to infer, without some additional evidence, that it would not have occurred if it involved a Caucasian employees with a criminal record[10]. Without some reasonable basis to infer racial character or purpose, the conduct alleged by LaBlance cannot and should not be considered as part of her race-based hostile work environment claim.[11]

### 2. LaBlance was not Constructively Discharged.

The required evidence for establishing a constructive discharge claim is even more demanding than that required to establish an actionable hostile work environment. LaBlance cannot point to any case law supporting her contention that she was subjected to working conditions so intolerable that she was forced to quit, and there is overwhelming uncontroverted evidence to the contrary. Other than citing a general statement of law, LaBlance identifies no authority supporting the idea that the facts here constitutes a constructive discharge. Also conspicuously absent from her Opposition, LaBlance does not even attempt to address or distinguish the cases and principles that Corizon laid out in its Motion.

It is uncontroverted that LaBlance voluntarily resigned her position, that she informed Corizon that she had accepted a new position at the time of her resignation, and that she worked three full weeks after her notice. (Dft's SOF 20, 21, 22). Nor can LaBlance controvert the fact that Corizon engaged in conversations about retaining her in the position and the fact that she at least once called the Health Services Administrator (H.S.A.) and indicated that she felt she may have decided to quit too soon. (Dft's SOF 23-24). Finally, LaBlance's farewell messages to the

---

[10] *See Dean v. Specialized Security Response*, 2011 WL 3734238 at *10 (W.D. Pa. 2011) (granting summary judgment on §1981 claims due to plaintiff's failure to identify similarly situated persons outside of the protected class; the alleged Caucasian comparator co-worker did not have a felony record like plaintiff.).

[11] *Singletary v. Mo. Det. Of Corrections*, 423 F.3d 886, 893 (8th Cir. 2005).

H.S.A. and her former supervising doctor, which LaBlance testified she "meant completely" at the time she left the messages, bely any notation that the working environment rose to such an intolerable level that LaBlance was "forced to quit." (Dft's SOF 25-26).

Perhaps most telling and significant, from February 1, 2019, the date of her resignation, to February 22, 2019, her last day of work, LaBlance admitted she did not say one word about alleged race discrimination, harassment, or retaliation. (Dft's SOF 27). Not a peep. Courts have consistently found that resignation letters which lack mention of intolerable conditions, persistence attendance at work following the resignation, and positive exit notes are "entirely inconsistent with an employee who views [her] working conditions as so intolerable as to compel any reasonable person to resign."[12] The rationale for this makes sense: having not only failed to say anything about discrimination and actually going out of her way to gratuitously say positive things about her employment, LaBlance did not give Corizon a reasonable opportunity to address issues before she resigned (perhaps because LaBlance knew there were no actual racial issues to address).

LaBlance simply cannot reverse-engineer a constructive discharge claims by using information learned after she resigned to suggest working conditions so intolerable that she was forced to quit. Though LaBlance relies on the access of her D.O.C. medical records as evidence that her co-workers were biased against her (facially unrelated to LaBlance's race), it is undisputed that LaBlance "did not pick up on" nor was she aware that any individual had

---

[12] *See Holowecki v. Fed. Exp. Corp.*, 644 F.Supp. 2d 338, 335 (S.D.N.Y 2009) finding that resignation letter which stated that FedEx "was a company I truly enjoyed working for" "is entirely inconsistent with an employee who views his working conditions as being so intolerable as to compel any reasonable person to resign."); *Johnson v. Wal-Mart Stores, Inc.*, 987 F. Supp. 1376, 1394 (M.D.Ala.1997) (indicating that waiting to resign after the conduct and giving three weeks' notice before resigning "strongly suggests that the conditions to which she allegedly were subjected were not intolerable").

accessed her record during her employment.[13] (Plft's SOF 16, 24). Information that LaBlance indisputably learned post her resignation is irrelevant to her claims.[14] When LaBlance quit to take a new job with a shorter commute, there are no facts suggesting that she had been exposed to an environment even close to approaching the high bar necessary for a constructive discharge claim, and it should accordingly be dismissed.

**B.     Summary Judgment Is Appropriate on Counts III and IV: LaBlance's Retaliation-Based Termination Claims.**

LaBlance's Opposition glaringly fails to identify any adverse employment action or a causal connection between any alleged employment action and alleged protected activity.[15] LaBlance points to no facts that fall under the definition of retaliatory conduct, as her employment was materially unaffected until she voluntarily left Corizon.[16] LaBlance's only suggestion of retaliatory conduct, beyond her constructive discharge claim, is that that her patient schedules were reduced (Pltf's SOF 63), but LaBlance did not get paid based on the number of patients she saw. She suggests, without support, that patient volume determined her "need to be in the position to have that job." (Pltf's SOF 64). LaBlance's claim is rampant speculation; any suggestion that her job was in jeopardy at any time is wholly unsupported, and actually *conflicts with* the uncontroverted fact that Corizon engaged LaBlance in conversations regarding keeping her in the position even after her decision to resign. (Dft's SOF 23).

---

[13] See *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 211 (4th Cir. 2019) ("Following our decisions and those of our sister circuits, we confirm that information about which a plaintiff is unaware cannot, by definition, be part of a Plaintiff's work experience. Thus, such information is not proper for consideration in evaluating the severe or pervasive requirement of a hostile work environment claim.").

[14] *Id*.

[15] *Putman v. Unity Health System*, 348 F.3d 732, 737 (8th Cir. 2003) (elements for retaliation).

[16] *See Muhammad v. City of St. Louis*, No. 4:18-CV-1757 RLW, 2020 WL 6939611, at *6 (E.D. Mo. Nov. 25, 2020) (granting summary judgment on the basis that plaintiff could not demonstrate that any instances caused him to suffer any material disadvantage and was not negatively affected in terms of compensation, terms, conditions or privileges of employment.).

LaBlance fails to establish critical elements of her retaliation claim, and they should accordingly be dismissed.

## IV. CONCLUSION

As explained above, summary judgment should therefore be granted to Defendant Corizon.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

/s/     Michael Matula
Michael L. Matula    MO #47568
Claudia M. Tran     MO #70391
4520 Main Street, Suite 400
Kansas City, MO  64111
816.471.1301
816.471.1303 (Facsimile)
michael.matula@ogletree.com
claudia.tran@ogletree.com

Attorneys for Defendant

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 17th day of December, 2020, the above and foregoing document was electronically filed and notice will be sent electronically to counsel for plaintiff, through the Court's electronic notification system.

/s/ Michael L. Matula

45346590.1