# *EXHIBIT A*

# Exhibit A
# Defendant's Reply to Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts

| No. | Defendant's Statement of Uncontroverted Material Fact | Plaintiff's Response | Defendant's Reply |
|---|---|---|---|
| 1 | Defendant Corizon Health Inc. provides healthcare services at correctional facilities in Missouri, including the Chillicothe Correctional Center. Exhibit 1, LaBlance Dep. 28:9-21. | Uncontroverted. | Uncontroverted. |
| 2 | LaBlance, who is African-American, began working as an Advanced Registered Nurse Practitioner at the Corizon Chillicothe facility on June 12, 2017. LaBlance Amended Pet., ¶¶4, 10; Ex. 1. LaBlance Dep 28:22-29:1. | Uncontroverted. | Uncontroverted. |

Exhibit A
Defendant's Reply to Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts

| No. | Defendant's Statement of Uncontroverted Material Fact | Plaintiff's Response | Defendant's Reply |
|---|---|---|---|
| 3 | Dr. Karen Epperson worked for Corizon at the Chillicothe facility as the on-site Medical Director; throughout her employment, LaBance thought she had a good relationship with Dr. Epperson and considered her a friend. Ex. 1, LaBance dep. 61:7-10, 62:25-63:23. | Controverted, in part. Plaintiff actually testified that she thought she had a good relationship with Dr. Epperson, but that was her "being naïve, probably." Plaintiff considered herself a friend to Dr. Epperson. (Ex. 1, 63:3-5, 23).1 Plaintiff later learned that Dr. Epperson betrayed her in part by accessing her private D.O.C. records and sharing that information with other employees. See Plaintiff's Statement of Additional Material Facts Establishing a Genuine Dispute for Trial ("Plaintiff's SOF") at ¶¶78, 84, 85, 86, 88 | This fact remains uncontroverted. It is an uncontroverted fact that Plaintiff testified that she "extended herself as a friend and a co-worker", and that she considered Epperson a friend. (Ex. 1, 63:11-23). Plaintiff's attempt to retroactively change the character of their friendship is immaterial. Nor can Plaintiff create a genuine issue of fact with information she learned after her employment ended. *See, e.g., Perkins v. Int'l Paper Co.*, 936 F.3d 196, 211 (4th Cir. 2019) ("Following our decisions and those of our sister circuits, we confirm that information about which a plaintiff is unaware cannot, by definition, be part of a plaintiff's work experience. Thus, such information is not proper for consideration in evaluating the severe or pervasive requirement of a hostile work environment claim.") |
| 4 | As with all Corizon employees, LaBlance completed and certified her participation in Corizon's Discrimination, Harassment, Retaliation and Unprofessional Conduct module training. Ex. 1, LaBance Dep. 56:3-20. | Controverted in part. Plaintiff testified that she completed the training but did not and cannot attest to whether all employees of Corizon did so. | This fact remains uncontroverted. Plaintiff does not provide evidence nor does Plaintiff point to any facts in the record indicating that any other Corizon employees did not complete the training, which is required for all employees. |

2

| No. | Defendant's Statement of Uncontroverted Material Fact | Plaintiff's Response | Defendant's Reply |
|---|---|---|---|
| 5 | On August 29, 2017, a co-worker used the phrase "n-word rigged" while LaBlance was present. Ex. 1, La Balance Dep. 74:9-25; 75;1-13. | Controverted in part. See Plaintiff's SOF, ¶¶25-34, incorporated herein by reference. | This fact remains uncontroverted. Plaintiff admitted that a co-worker used the phrase "n-word rigged" while she was present. (Ex. 1, La Balance Dep. 74:9-25; 75;1-13.) |
| 6 | Another co-worker, not LaBlance, reported the offending co-worker to Crizon management. Ex. 1, LaBlance Dep. 205:12-17. | Controverted in part. Plaintiff also reported the incident directly to Dr. Lovelace. See Plaintiff's SOF, ¶¶25-34, incorporated herein by reference. | This fact remains uncontroverted. Plaintiff admitted that the incident was reported by someone else to the Health Services Administrator, who launched the investigation which led to the employee being terminated. (Ex. 1, 76:12-16). |
| 7 | Prior to this incident, LaBlance had never heard any racially inappropriate language at Corizon. Ex. 1, LaBlance Dep. 87:17-22 | Uncontroverted. This incident was the first overtly racial language that Plaintiff recalls directed at her. It caught her "off guard" particularly since she had just recently started working and knew that employees should have completed sensitivity training. The fact that this co-worker felt privileged to say this kind of blatantly racial and offensive language to Plaintiff with no filter was alarming and was indicative of the racially insensitive and hostile culture that Plaintiff now understood she would be facing during her employment. See Plaintiff's SOF, ¶¶25-34, incorporated herein by reference | This fact remains uncontroverted. LaBlance admits that it is "uncontroverted" and her additional commentary is immaterial. Plaintiff's attempt to detract from the irrefutable fact that LaBlance never heard any racially inappropriate language prior to the incident does not create a genuine issue of material fact and should be disregarded. |

3

| No. | Defendant's Statement of Uncontroverted Material Fact | Plaintiff's Response | Defendant's Reply |
|---|---|---|---|
| 8 | The same day, the Health Services Administrator at the time, Theresa McWhorter, investigated the claim and got statements from six employees, including LaBlance, and the offender. Ex. 1, LaBance Dep. 80:16-17 | Uncontroverted that the incident was investigated. Notably, this "investigation" was led by the same supervisor that instigated rumors, shared private information about Plaintiff's criminal record, and encouraged employees to access Plaintiff's D.O.C. records from the outset of her employment. The matter was not and could not be properly resolved by merely terminating the offending co-worker given the culture at Corizon – a culture that allowed a supervisor to circulate private data intended to ridicule and minimize the only African-American employee, to encourage violation of HIPAA and Corizon policies by those she supervised, and create an environment or culture where an employee felt privileged to spew overtly racist and hate-based language and engage in other offensive conduct. See Plaintiff's SOF, ¶¶11-15, 25-34, 53-54, 65-66 and incorporated herein by reference. | Uncontroverted. Plaintiff's additional commentary is immaterial for purpose of determining what facts or in dispute. LaBlance's attempts to detract from the irrefutable fact that the fact that the incident was thoroughly investigated immediately upon Corizon's awareness of the incident does not create a genuine issue of material fact and should be disregarded. |

4

# Exhibit A
# Defendant's Reply to Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts

| No. | Defendant's Statement of Uncontroverted Material Fact | Plaintiff's Response | Defendant's Reply |
|---|---|---|---|
| 9 | The offending employee was terminated within a day of the incident, and according to LaBlance, "that was the end of it." Ex. 1, LaBlance Dep. 80:16-17. | Controverted. While Plaintiff testified that terminating the offending employee was "the end of it" for Corizon (but should not have been), she also testified it was only the beginning for Plaintiff who became acutely aware at that point in time of the culture she would be battling going forward. See Response to #8 above; and Plaintiff's SOF, ¶¶25-34, incorporated herein by reference. | This fact remains uncontroverted. Plaintiff testified "that was the end of it," (Ex. 1, LaBlance Dep. 80:16-17) and cannot retroactively attempt to controvert her own testimony. |
| 10 | After the incident, LaBlance never again heard any racially inappropriate language at Corizon. Ex. 1, LaBlance Dep. 87:23-88:1. | Uncontroverted. Plaintiff testified that she understood that the termination would likely stifle other employees from using overtly racial hate language in front of Plaintiff. In part because Corizon made no effort to deliver more sensitivity training (which clearly had not been effective), she also felt she was now "on an island" within a culture where it would now be okay to use the racial language so long as someone who looks like Plaintiff was not present. See Plaintiff's SOF, ¶¶25-34, incorporated herein by reference. | This fact remains uncontroverted. LaBlance admits that it is "uncontroverted" and her additional commentary is immaterial. Plaintiff's attempt to detract from the irrefutable fact that the fact that LaBlance never heard any racially inappropriate language following the incident does not create a genuine issue of material fact and should be disregarded. |

5

| No. | Defendant's Statement of Uncontroverted Material Fact | Plaintiff's Response | Defendant's Reply |
|---|---|---|---|
| 11 | On June 6, 2018, LaBlance emailed Sterling Ream (Health Services Administrator), Dr. Karen Epperson (Medica Director), Dr. Jerry Lovelace (Regional Medical Director), Jenny Meehan (Director of Operations), and Valicia Kirby (Nurse Practitioner) regarding allegations of employee discrimination against a lab technician named Judy Harkins. | Uncontroverted. | Uncontroverted. |
| 12 | LaBance alleged that in order to process specimens that she brought Harkins in the lab, Harkins required her to fill out requisition paperwork that she did not require of other, non-African-American medical providers. Exhibit 3, Meehan Dep. 62:6-12. | Controverted, in part. Plaintiff's allegations of race discrimination focused on the disparate treatment she received vis a vis the other white providers, and specifically Harkins' blatant disrespect and insubordination when she refused to complete requisition paperwork requested by Plaintiff, grabbed a lab specimen Plaintiff had placed on the counter by the refrigerator for processing, stormed past Plaintiff and threw it back on Plaintiff's desk. The other providers did not have this experience. This incident was the second incident reported by Plaintiff and ignored. See Plaintiff's SOF, ¶¶43-60, incorporated herein by reference. | This fact remains uncontroverted. Plaintiff provides only her self-serving allegations on this issue, and Meehan testified she conducted an investigation, which involved interviewing multiple providers, and could not corroborate Plaintiff's allegations. Plaintiff's lack of evidence supporting her allegations is insufficient to create a dispute of material fact on summary judgment. |

6

# Exhibit A
# Defendant's Reply to Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts

| No. | Defendant's Statement of Uncontroverted Material Fact | Plaintiff's Response | Defendant's Reply |
|---|---|---|---|
| 13 | Meehan investigated LaBlance's complaint, discussing the allegations with LaBlance, Harkins, and the other non-African American medical providers at the facility. | Controverted, in part. Meehan "investigated" the claim, but never discussed it with Plaintiff until she had already concluded that the issue was simply a misunderstanding or a communication issue and that neither LaBlance or Judy Harkins did anything wrong. See Plaintiff's SOF, ¶¶43-60, incorporated herein by reference. | This fact remains uncontroverted. It is an undisputed fact that Plaintiff admitted that the complaint was immediately investigated. Plaintiff's disagreement with the outcome of the investigation does not create a genuine issue of fact that the matter was investigated and that Meehan was unable to corroborate Plaintiff's unsupported allegations. |

7

| No. | Defendant's Statement of Uncontroverted Material Fact | Plaintiff's Response | Defendant's Reply |
|---|---|---|---|
| 14 | The other providers at the facility told Meehan that they too were required to complete the requisitions at times, in opposition to LaBlance's allegations that she was the only provider required to complete the forms. Ex. 3, Meehan Dep. 62:16-21. | Controverted, in part. Meehan missed the point. She failed to focus on the behavior of Judy Harkins, the only lab technician, and how her reactions and behavior toward Plaintiff differed from when the other white providers requested that she process a specimen for evaluation in the lab. Meehan didn't think Ms. Harkin's behavior was "important" in evaluating whether race discrimination occurred. And although Sterling Ream was copied on Plaintiff's complaint as the site administrator, Ms. Meehan was not advised that Ms. Ream had previously accessed Plaintiff's D.O.C. records, that Teresa McWhorter had encouraged numerous others to do so, and that rumors were flying among numerous other employees about Plaintiff's criminal record. Not surprisingly, the other providers advised Plaintiff that they were not treated the way she was treated by Judy Harkins. See Plaintiff's SOF, ¶¶43-60, incorporated herein by reference | This fact remains uncontroverted. Nothing in Plaintiff's Response controverts this Fact. It is an undisputed fact that Plaintiff admitted that the complaint was immediately investigated. Plaintiff's disagreement with the outcome of the investigation does not create a genuine issue of fact that the matter was investigated and that Meehan was unable to corroborate Plaintiff's unsupported allegations. |

8

**Exhibit A**
**Defendant's Reply to Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts**

| No. | Defendant's Statement of Uncontroverted Material Fact | Plaintiff's Response | Defendant's Reply |
|---|---|---|---|
| 15 | Meehan confirmed that other providers filled out requisitions by reviewing past requisition forms, some of which had been completed by all three providers, including LaBlance and the other, non-African-American providers. Ex. 3, Meehan dep. 66:10-16. | Uncontroverted. | Uncontroverted. |
| 16 | Through Meehan's review of the past requisition forms, she also confirmed that every request made by LaBlance had in fact been run by the lab technician in question. Ex. 3, Meehan Dep. 69:3-6. | Uncontroverted. But again, Meehan missed the point. See Response to #14; and See Plaintiff's SOF, ¶¶43-60, incorporated herein. | This fact remains uncontroverted. It is an uncontroverted fact that the Plaintiff admitted that the complaint was immediately investigated. Plaintiff's disagreement with the outcome of the investigation does not create a genuine issue of fact that the matter was investigated and that Meehan was unable to corroborate Plaintiff's unsupported allegations. |

9

Exhibit A
Defendant's Reply to Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts

| No. | Defendant's Statement of Uncontroverted Material Fact | Plaintiff's Response | Defendant's Reply |
|---|---|---|---|
| 17 | Meehan also noted that Harkins was a difficult personality, who when she believes she is correct about something does not always display the most professional behavior with all members of the team, including non-African-American co-workers. Ex. 3, Meehan Dep. 65:16¬19; Exhibit 4, Declaration of Sterling Ream, ¶9. | Controverted, in part. While Ms. Meehan apparently concluded this "difficult personality" to be a non-discriminatory explanation for Judy Harkins' behavior, Plaintiff disagrees that this conclusion was correct or even reasonable. Again, Sterling Ream failed to disclose her improper access of Plaintiff's D.O.C. record and the rumors "flying" among employees about Plaintiff's criminal history, or that the former HSA had actually encouraged employees to access the records creating a hostile environment for Plaintiff and fostering bad behavior toward her. Ms. Ream participated in spreading the data. Judy Harkins also accessed Plaintiff's D.O.C. record albeit 7 or 8 months later, but unlike the other employees has never been reprimanded. Again, the other white providers did not endure the same level of "difficult personality". See Plaintiff's SOF, ¶¶43-60, 65-66, 94 incorporated herein by reference. | This fact remains uncontroverted. It is an undisputed fact that Plaintiff admitted that the complaint was immediately investigated. Plaintiff's disagreement with the outcome of the investigation does not create a genuine issue of fact that the matter was investigated and that Meehan was unable to corroborate Plaintiff's unsupported allegations. Plaintiff fails to offer any evidence or provide any facts to support that any alleged differences in treatment by Harkins was motivated by racial animus. |

10

| No. | Defendant's Statement of Uncontroverted Material Fact | Plaintiff's Response | Defendant's Reply |
|---|---|---|---|
| 18 | Based on the evidence that LaBlance was not singled out and treated differently by Harkins, as other providers also filled out requisition paperwork, and because Harkins was considered a difficult personality, Meehan concluded that the dispute between LaBlance and Harkins was a communication issue, not a discrimination issue. Ex. 3, Meehan Dep. 65:9-14. | Controverted. See Response to #17; and Plaintiff's SOF, ¶¶43-60, 65-66, 94 incorporated herein by reference. | This fact remains uncontroverted. It is an undisputed fact that Plaintiff admitted that the complaint was immediately investigated. Plaintiff's disagreement with the outcome of the investigation does not create a genuine issue of fact that the matter was investigated and that Meehan was unable to corroborate Plaintiff's unsupported allegations. Plaintiff fails to offer any evidence or provide any facts to support that any alleged differences in treatment by Harkins was motivated by racial animus. |
| 19 | Meehan informed LaBlance of her investigation conclusion, and offered LaBlance the opportunity to sit down with Harkins to discuss the situation, but LaBlance refused. Ex. 1, LaBance Dep. 146:7-11. | Uncontroverted. Once Corizon concluded that no race discrimination had occurred, and Judy Harkins had done nothing wrong, there was nothing for Plaintiff to discuss with Ms. Harkins. Ms. Harkins was emboldened to continue her behavior within the culture. It is not incumbent on Plaintiff to eliminate the hostile environment created and nurtured by Corizon. Ex. 1, 147:2-6. | This fact remains uncontroverted. Plaintiff does not dispute that she refused to discuss the situation with Judy Harkins. |
| 20 | On February 1, 2019, LaBlance tendered her resignation to Corizon, giving three-week's notice. Ex. 1, LaBlance Dep. 12:11-24. | Uncontroverted. | Uncontroverted. |

# Exhibit A
## Defendant's Reply to Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts

| No. | Defendant's Statement of Uncontroverted Material Fact | Plaintiff's Response | Defendant's Reply |
|---|---|---|---|
| 21 | LaBlance gave the reason for her resignation as travel related, stating that the long drive between her home in Kansas City and the facility in Chillicothe was too much. Ex. 1, LaBlance Dep. 193:7-12. | Uncontroverted. But Plaintiff resigned because she felt singled out, uncomfortable, fearful, and worried about her license, among other things. See Plaintiff's SOF, ¶¶81-83 incorporated herein by reference. | This fact remains uncontroverted. Regardless of Plaintiff's attempt to retroactively re-write the narrative of her resignation, the fact remains uncontroverted that Plaintiff admitted that at the time of her resignation she informed Corizon that the reason was for travel purposes and did not mention race discrimination or harassment. |
| 22 | LaBlance also informed Corizon on February 1 that she had accepted another job at the time she turned in her resignation. Ex. 1, LaBlance Dep. 196:9-15. | Uncontroverted. | Uncontroverted. |
| 23 | Corizon initiated conversations with LaBlance asking what they would need to do for her to stay at Corizon, and LaBlance provided conditions for which she would consider rescinding her resignation. Ex. 1, LaBlance Dep. 198:5-13. | Controverted, in part. Plaintiff agrees that Corizon asked her what she would need to consider staying but denies that Corizon made any real effort to engage in a conversation on that issue. Corizon made no response to Plaintiff's conditions other than a perfunctory "we can't do that." The request was merely pretext. See Ex. 1, 198:5-199:12. | This fact remains uncontroverted. It is uncontroverted fact that Plaintiff admitted that Corizon asked her what they would need to do for her to stay at Corizon, and Plaintiff provides no additional facts nor points to any facts on the record to support her claim that the request was "merely pretext". |

12

**Exhibit A**
**Defendant's Reply to Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts**

| No. | Defendant's Statement of Uncontroverted Material Fact | Plaintiff's Response | Defendant's Reply |
|---|---|---|---|
| 24 | A few days after her resignation, LaBlance called the Health Services Administrator and indicated that she felt she may have made the decision to quit too soon. Ex. 1, LaBlance Dep. 201:16-24. | Controverted, in part. While Plaintiff did have some discussion with Corizon about a change in schedule and the possibility of taking FMLA leave, ultimately Corizon would not allow her to rescind her resignation. Ex. 1, 201:14-202:10 | This fact remains uncontroverted. It is an uncontroverted fact that Plaintiff admitted that she had discussions with Corizon after her resignation regarding how she felt she may have made the decision to quit too soon. Nothing in Plaintiff's Response controverts Fact 24 (and she does not dispute that said she may have made the decision to quit too soon). |
| 25 | LaBlance's last day of work was February 22. On her last day, she sent an email to Meehan with the subject "Thank You" which read in part, "the endurance, perseverance, and triumph is due to the wonderful individuals who work diligently and it has been a pleasure to be a part of the team and to be of service. Thank you. Ex. 1, LaBlance Dep. 203:1-18; Exhibit 5, LaBance E-Mail February 22, 2019. | Uncontroverted. Plaintiff testified that although she felt Meehan had been one of the people that had discriminated against her, she believes that email was the "proper way to exit a position." Ex. 1, 203, 1-22. | This fact remains uncontroverted. It is an uncontroverted fact that Plaintiff sent the email on her last day of employment, and that Plaintiff testified that she "completely" meant the words. (Ex. 1, 203:16-18). |

13

| No. | Defendant's Statement of Uncontroverted Material Fact | Plaintiff's Response | Defendant's Reply |
|---|---|---|---|
| 26 | On February 22, LaBlance also left a voicemail for Dr. Epperson, her immediate medical supervisor, in which she said in part, "I will miss you. I will miss working with you and you are a friend. And so I'm not saying good-bye. I'm saying I will see you soon and I just appreciate you and I thank you. You have been a blessing to me...I love you." Ex. 1, LaBlance Dep. 218:5-22; 219:1-15 | Controverted, in part. Plaintiff actually testified that she thought she had a good relationship with Dr. Epperson, but that was her "being naïve, probably." Plaintiff considered herself a friend to Dr. Epperson. (Ex. 1, 63:3-5, 23). She would discuss issues of discrimination with Dr. Epperson, and she would agree that "it sounds like discrimination to me" and encourage Plaintiff to make a complaint. Plaintiff later learned that Dr. Epperson betrayed her in part by accessing her private D.O.C. records and sharing that information with other employees. See Plaintiff's SOF at ¶¶78, 84, 85, 86, 88 incorporated by this reference | This fact remains uncontroverted. Plaintiff testified that at the time she left the message, she meant what she said to Epperson, and Plaintiff's efforts to walk back her own statements and retroactively reassign her feelings does not create a genuine factual issue where Plaintiff relies on information learned after her resignation. (Ex. 1, 219:15-21). |
| 27 | Between the dates of February 1, 2019, the date of her resignation, and February 22, 2019, her last day of work, LaBlance never mentioned or had any discussions with Corizon regarding race discrimination, harassment, or retaliation. Ex. 1, LaBlance Dep. 194:22-25 | Uncontroverted. | Uncontroverted. |

14

# Exhibit A
# Defendant's Reply to Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts

| No. | Defendant's Statement of Uncontroverted Material Fact | Plaintiff's Response | Defendant's Reply |
|---|---|---|---|
| 28 | LaBlance was never physically threatened in any way while she worked at Corizon. Ex. 1, LaBlance dep. 196:2-8 | Controverted in part. While Plaintiff testified that she was never threatened with physical violence, she was nevertheless fearful because she did not fully understand where the animosity was coming from. She felt intimidated and watched by the custody officers who stood outside her door, and the security guards that paid close attention to her belongings on the scanner when she entered the facility and did not do the same for white employees. See Plaintiff's SOF, SOF at ¶¶ 67-68, 71, 81-83 incorporated by this reference. | This fact remains uncontroverted. Plaintiff admitted that she was never physically threatened in any way while employed by Corizon. (Ex. 1, 196:2-8). |